# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF SOUTH CAROLINA

KEVIN SMITH, a/k/a Bar-None, )
Royal Blackness #164920, )
                             )
            Plaintiff,       )    Civil Action No. 0:04-1819-PMD-BM
                             )
                             )         **SUPPLEMENTAL**
JON OZMINT, DIRECTOR OF      )    **REPORT AND RECOMMENDATION**
THE SOUTH CAROLINA           )
DEPARTMENT OF                )
CORRECTIONS, ET.AL,          )
                             )
            Defendants.      )
_____)

Plaintiff, an inmate with the South Carolina Department of Corrections proceeding pro se, instituted this action by Complaint filed June 23, 2004. On August 22, 2005, Plaintiff filed a motion for TRO and/or a preliminary injunction (Court Document No. 127) seeking an order from this Court preventing the Department of Corrections from "forcibly grooming" him. In a Report and Recommendation[1] filed August 30, 2005 it was recommended that this motion be denied based on prior precedent upholding the SCDC grooming policy. This matter was remanded to the undersigned, however, for consideration of Plaintiff's motion under the Religious Land Use and Institutionalized Persons Act (RLUIPA), which had been enacted after the Court rulings cited in the original Report and Recommendation, and which evaluated Plaintiff's claims under the United

---

[1] A Report and Recommendation is required on this motion pursuant to 28 U.S.C. § 636(b)(1)(A).



States Constitution.

RLUIPA provides that no government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution unless the government demonstrates that imposition of the burden on that person 1) is in furtherance of a compelling governmental interest, and 2) is the least restrictive means of furthering that compelling governmental interest. See 2 U.S.C. § 2000cc-1(a); Cutter v. Wilkinson, 125 S.Ct. 2113, 2118 (2005). Plaintiff is a practicing Rastafarian, which religion forbids the cutting of hair, and argues in his motion that the Department's grooming policy violates his rights under RLUIPA. However, for the reasons set forth hereinbelow, the undersigned finds that, even if Plaintiff's grooming claim is considered under RLUIPA, he is still not entitled to the relief he seeks.

Plaintiff's grooming claim is not yet before the Court for consideration on the merits; rather, Plaintiff is at this point only seeking to stop enforcement of the grooming policy until such time as the merits of his claim are decided.     In considering such a motion, the Court should balance the following four factors; 1) the likelihood of irreparable harm to the Plaintiff if the injunction is not granted; 2) the likelihood of harm to the Defendants if the injunction is granted; 3) the likelihood that the Plaintiff will succeed on the merits; and 4) the public interest. Blackwelder Furniture Co. of Statesville, Inc. v. Seilig Manufacturing Co., Inc., 550 F.2d 189, 195-196 (4th Cir. 1977); Hughes Network Systems v. InterDigital Com. Corp., 17 F.3d 691, 693 (4th Cir. 1994); Safety-Kleen, Inc. v. Wyche, 274 F.3d 846, 858-859 (4th Cir. 2001). The balancing of the relative hardships (factors one and two) is the most important determination, and how strong a showing the Plaintiff must make with regard to a likelihood of success on the merits depends on to what degree the likelihood of irreparable harm balances in his favor. Id. (citing Rum Creek Coal Sales, Inc. v.



Caperton, 926 F.2d 353, 359 (4th Cir. 1991)).

Here, the irreparable harm claimed by the Plaintiff is that he will have to violate his religious beliefs in order to have his hair cut, or will otherwise be forced to undergo a haircut. The Court can assume such a policy, as applied to Rastafarians like the Plaintiff, imposes irreparable harm to the extent that it violates Plaintiff's sincerely held religious beliefs. *Cf.* Hines v. South Carolina Department of Corrections, 148 F.3d 353, 358 (4th Cir. 1998). However, the harm to Defendants if the injunction is granted outweighs any harm suffered by the Plaintiff. In an affidavit provided to the Court, the Department's Director of Division Operations, Robert Ward, sets forth numerous examples showing the importance of maintaining the Department's grooming standards, which are entitled to substantial deference by this Court. See Ward Affidavit, at ¶¶ 7-10; see generally, Sweet v. South Carolina Department of Corrections, 529 F.2d 854, 859 (4th Cir. 1975) (en banc) [describing federal court's deference to prison administrators and all administrative matters unless the condition rises to the level of a constitutional violation]; Cutter, 125 S.Ct. at 2119 [noting that courts entertaining complaints under the RLUIPA accord due deference to the experience and expertise of prison administrators].

Further, in order to be entitled to injunctive relief Plaintiff must also show, in addition to other criteria, a likelihood that he will succeed on the underlying merits of his claim. Smyth v. Rivero, 282 F.3d 268, 276 (4th Cir. 2002). Plaintiff has made no such showing. First, there is a question as to whether the RLUIPA statute even applies to the Defendants, since it is necessary that the South Carolina Department of Corrections receive federal financial assistance in order for the statute to apply in this case. See 42 U.S.C. § 2000cc-1(b). Defendant argues that Plaintiff has presented no evidence, or even argument, to show that the Department of Corrections is a recipient



of federal financial assistance. But see Cutter, 125 S.Ct. At 2118-2119 n. 4 ["Every State...accepts federal funding for its prisons"]. Additionally, even if this statute does apply in this case, Plaintiff has failed to otherwise show a likelihood of success on the merits of his claim. The Fourth Circuit Court of Appeals has already found in Hines that the SCDC grooming policy serves a compelling penological interest. 148 F.3d at 358. Although Hines involved a constitutional challenge to the grooming policy, and was not evaluated under the "strict scrutiny" standard of the RLUIPA, the fact remains that the Fourth Circuit in Hines concluded that the Department of Corrections had a "compelling" penological interest in preventing inmates from wearing long hair and beards. See also Ward Affidavit. Numerous court rulings have also found that grooming regulations, including the forced cutting of hair, meet the "least restrictive means" criteria, even under a "strict scrutiny" analysis. Clark v. Briley, No. 03-3852, 2005 WL 2369330 at *2-4 (N.D.Ill. Sept. 26, 2005) [finding that forcing inmate to submit to a haircut was the least restrictive means of meeting the safety and security concerns at the prison]; Hoevenaar v. Lazaroff, 422 F.3d 366 (6th Cir. 2005); Brunskill v. Boyd, 141 Fed.Appx. 771, 775 (11th Cir. 2005). Cf. Hamilton v. Schriro, 74 F.3d 1545, 1555 (8th Cir. 1996) [claim evaluated under old Religious Freedom Restoration Act (RFRA)]; Harris v. Chapman, 97 F.3d 499, 504 (11th Cir. 1996); Diaz v. Collins, 114 F.3d 69, 73 (5th Cir. 1997) [same].

     While Plaintiff argues that the Department's previous policy allowed prisoners to be placed in the SMU rather than have their hair cut, but now requires all prisoners to have their hair cut with no alternative being provided, under the cited caselaw Plaintiff has still failed to make a clear showing of probable success on his claim, even under the present policy of forced grooming for all inmates. Clark, 2005 WL 2369330 at *2 ["Under..[RFRA's] analogous compelling interest

4



standard, prison hair length regulations have been routinely found to be related to security considerations."].  See  Murphy v. Society of Real Estate Appraisers, 388 F.Supp. 1046, 1049 (E.D.Wis. 1979) [Both a preliminary injunction and a temporary restraining order are extraordinary remedies which will not be granted unless there is a clear showing of both probable success and irreparable injury], vacated and remanded, 544 F.2d 521 (7th Cir. 1976); see also Green v. Ozmint, et al.,C/A No. 2:04-22074-22AJ (order of the Honorable Cameron McGowan Currie, United States District Judge, filed March 16, 2005, at pp. 8-15).

In sum, based on the material before the Court, Plaintiff has failed to show that the likelihood of harm balances in his favor, or a sufficient likelihood that he will succeed on the merits of this claim, to entitle him to the extraordinary remedy of the granting of a TRO or preliminary injunction, even considering his claim under the standards of the RLUIPA.  Therefore, it continues to be the recommendation of the undersigned that Plaintiff's motion for preliminary injunction or TRO be **denied**.

The parties are referred to the Notice Page attached hereto.

_____
Bristow Marchant
United States Magistrate Judge

Columbia, South Carolina

January  18,  2006



## Notice of Right to File Objections to Magistrate Judge's Report and Recommendation
## &
## The Serious Consequences of a Failure to Do So

The parties are hereby notified that any objections to the attached Report and Recommendation (or Order and Recommendation) must be filed within ten (10) days of the date of its filing. 28 U.S.C. § 636 and Fed. R. Civ. P. 72(b). The time calculation of this ten-day period excludes weekends and holidays and provides for an additional three days for filing by mail. Fed. R. Civ. P. 6. Based thereon, this Report and Recommendation, any objections thereto, and the case file will be delivered to a United States District Judge fourteen (14) days after this Report and Recommendation is filed. Advance Coating Technology, Inc. v. LEP Chemical, Ltd., 142 F.R.D. 91, 94 & n. 3 (S.D.N.Y. 1992). A magistrate judge makes only a recommendation, and the authority to make a final determination in this case rests with the United States District Judge. See Mathews v. Weber, 423 U.S. 261, 270-271 (1976); and Estrada v. Witkowski, 816 F. Supp. 408, 410 (D.S.C. 1993).

During the ten-day period, but not thereafter, a party must file with the Clerk of Court specific, written objections to the Report and Recommendation, if he wishes the United States District Judge to consider any objections. Any written objections must *specifically identify* the portions of the Report and Recommendation to which objections are made *and* the basis for such objections. Failure to file written objections shall constitute a waiver of a party's right to further judicial review, including appellate review, if the recommendation is accepted by the United States District Judge. See United States v. Schronce, 727 F.2d 91, 94 & n. 4 (4th Cir.), *cert. denied*, Schronce v. United States, 467 U.S. 1208 (1984); and Wright v. Collins, 766 F.2d 841, 845-47 & nn. 1-3 (4th Cir. 1985). Moreover, if a party files specific objections to a portion of a magistrate judge's Report and Recommendation, but does not file specific objections to other portions of the Report and Recommendation, that party waives appellate review of the portions of the magistrate judge's Report and Recommendation to which he did not object. In other words, a party's failure to object to one issue in a magistrate judge's Report and Recommendation precludes that party from subsequently raising that issue on appeal, even if objections are filed on other issues. Howard v. Secretary of HHS, 932 F.2d 505, 508-509 (6th Cir. 1991). See also Praylow v. Martin, 761 F.2d 179, 180 n. 1 (4th Cir.)(party precluded from raising on appeal factual issue to which it did not object in the district court), *cert. denied*, 474 U.S. 1009 (1985). In Howard, supra, the Court stated that general, non-specific objections are *not* sufficient:

> A general objection to the entirety of the [magistrate judge's] report has the same effects as would a failure to object. The district court's attention is not focused on any specific issues for review, thereby making the initial reference to the [magistrate judge] useless. * * * This duplication of time and effort wastes judicial resources rather than saving them, and runs contrary to the purposes of the Magistrates Act. * * * We would hardly countenance an appellant's brief simply objecting to the district court's determination without explaining the source of the error.

*Accord* Lockert v. Faulkner, 843 F.2d 1015, 1017-19 (7th Cir. 1988), where the Court held that the appellant, who proceeded *pro se* in the district court, was barred from raising issues on appeal that he did not specifically raise in his objections to the district court:

> Just as a complaint stating only 'I complain' states no claim, an objection stating only 'I object' preserves no issue for review. * * * A district judge should not have to guess what arguments an objecting party depends on when reviewing a [magistrate judge's] report.

See also Branch v. Martin, 886 F.2d 1043, 1046 (8th Cir. 1989)("no de novo review if objections are untimely or general"), which involved a *pro se* litigant; and Goney v. Clark, 749 F.2d 5, 7 n. 1 (3rd Cir. 1984)("plaintiff's objections lacked the specificity to trigger *de novo* review"). This notice, hereby, apprises the parties of the consequences of a failure to file specific, written objections. See Wright, supra,; and Small v. Secretary of HHS, 892 F.2d 15, 16 (2nd Cir. 1989). Filing by mail pursuant to Fed. R. Civ. P. 5 may be accomplished by mailing addressed as follows:

Larry W. Propes, Clerk
United States District Court
901 Richland Street
Columbia, South Carolina 29201
