IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Kevin Smith, a/k/a Bar-None Royal Blackness #164920<br>       Plaintiff,<br><br>v.<br><br>Jon Ozmint, Director of the South Carolina Department of Corrections, et. al.,<br>       Defendants. | )<br>)<br>)<br>)   C.A. No. 04-1819<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

      This matter is before the court upon Kevin Smith, aka Bar None Royal Blackness's ("Plaintiff" or "Blackness") Motion for a temporary restraining order ("TRO") and/or preliminary injunction. Plaintiff is seeking an order from the court preventing the South Carolina Department of Corrections ("SCDC") from forcibly cutting his hair. Plaintiff alleges that, because hair-cutting is contrary to the tenants of Rastafarianism, such cutting of his hair is in violation of the Religious Land Use and Institutionalized Persons Act ("RLUIPA"). The record contains a report and recommendation of the Magistrate ("the R & R"), which was made in accordance with 28 U.S.C. § 636(b)(1)(B). A party may object, in writing, to a report and recommendation within ten days after being served with a copy of that report. 28 U.S.C. § 636 (b)(1). Plaintiff has timely filed objections to the R & R, which recommended the denial of Plaintiff's requests for temporary restraining orders.

## I. BACKGROUND

      The current SCDC Policy regarding "Inmate Grooming Standards" (the "Policy") requires all male inmates' hair be "neatly cut (not to exceed one inch in length) and must remain above the shirt collar and above the ear (not touching the ear). Braids, plaits, Afros, blow-outs, Mohawks,

1

etching of designs or patterns, or other extreme styles are not allowed." (See SCDC Policy No. OP-22.13, 1.1) The Policy requires that all inmates, regardless of religious objections, be in compliance with this standard. Inmates who refuse to comply with the inmate grooming standards "may be given forced haircuts or shaves."[1] (SCDC Policy No. OP-22.13, 3.3.)

Plaintiff, an inmate with the SCDC proceeding pro se, instituted this action by Complaint filed June 23, 2004. Plaintiff is a practicing member of the Rastafarian faith which, among other things, prohibits the cutting of hair. Plaintiff alleges that when he refused to comply with the SCDC grooming policy, he "is then sprayed with Cs gas directly in the face, then beaten and shackled by the forced cell movement team usually consisting of six or more prison guards, dragged across the floor to the barber shop to then be further assaulted by another SCDC inmate who is allowed per SCDC staff to participate in enforcing the SCDC grooming policy by shaving the Plaintiff's head with sharp clippers while covered with hazardous chemical agents [Cs gas]." (Pl. Mot. at 2.) Plaintiff has now filed a motion for TRO and/or preliminary injunction (Court Document No. 127), seeking an order from this court preventing the SCDC from forcibly cutting his hair and enjoining SCDC from allowing fellow inmates to cut his hair.[2]

---

[1] Prior to 2004, the SCDC's "Inmate Grooming Standards" allowed an exception for inmates claiming a religious objection from the general requirement that inmates have short hair and no beards. Under the old Policy, an inmate who refused to have his hair cut was allowed to keep his hair long, but was placed in custody level ML5, a higher security classification which permitted corrections officers to guard them more closely and thereby reduce the potential security and health problems caused by long hair. Director Jon Ozmint issued a memorandum changing this policy to the current Policy effective May 1, 2004.

[2] Plaintiff's claim that fellow inmates participate in forcing his compliance with the Policy was not addressed either by Defendants in their brief, or by the magistrate in the R & R.

2

## II. STANDARD OF REVIEW

### A. The R & R

The magistrate judge makes only a recommendation to this court. The recommendation has no presumptive weight, and the responsibility to make a final determination remains with the court. *See Mathews v. Weber*, 423 U.S. 261 (1976). This court is charged with conducting a *de novo* review of any portion of the Magistrate Judge's R & R to which a specific objection is registered, and may accept, reject, or modify, in whole or in part, the recommendations contained in that R & R. 28 U.S.C. § 636 (b)(1).

### B. Religious Land Use and Institutionalized Persons Act [RLUIPA]

Plaintiff asserts as a cause of action violation of § 3 of RLUIPA in his original complaint. Section 3 of RLUIPA provides, in relevant part, that "[n]o government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution. . . even if the burden results from a rule of general applicability," unless the government establishes that the burden furthers "a compelling government interest," and does so by "the least restrictive means." 42 U.S.C. § 2000cc-1(a)(1)-(2). RLUIPA defines "religious exercise" to include "any exercise of religion, whether or not compelled by, or central to, a system of religious belief." § 2000cc-5(7)(A). "A person may assert a violation of [RLUIPA] as a claim or defense in a judicial proceeding and obtain appropriate relief against a government." § 2000cc-2(a).

The Supreme Court recently upheld RLUIPA against a challenge under the Establishment Clause. *Cutter v. Wilkinson*, 544 U.S. 709, 125 S.Ct. 2113 (2005). In *Cutter*, the Court found that RLUIPA's institutionalized-persons provision was compatible with the Court's Establishment Clause jurisprudence and concluded that RLUIPA "alleviates exceptional government-created

burdens on private religious exercise." *Id.* at 2121. In upholding the act, the Court recognized RLUIPA "[a]s the latest of long-running congressional efforts to accord religious exercise heightened protection from government-imposed burdens," *id.* at 2117, and that Congress sought to provide inmates a mechanism to seek redress against the " 'frivolous or arbitrary' barriers [that] impeded institutionalized persons' religious exercise," *id.* at 2119; *see also id.* at 2115 (noting that RLUIPA's purpose is to "protect[ ] institutionalized persons who are unable freely to attend to their religious needs and are therefore dependent on the government's permission and accommodation of their religion"). Congress did this by replacing the "legitimate penological interest" standard articulated in *Turner v. Safley,* 482 U.S. 78, 89, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987), with the "compelling governmental interest" and "least restrictive means" tests codified at 42 U.S.C. § 2000cc-1(a). *See also Cutter,* 125 S.Ct. at 2119.

### III. ANALYSIS

In order to issue a preliminary injunction under Rule 65 (b), this court must consider the following four factors: (1) the likelihood of irreparable harm to the plaintiff if the court denies the preliminary injunction; (2) the likelihood of harm to the defendants if the injunction is granted; (3) the likelihood that the plaintiff will succeed on the merits of his underlying claim; and (4) the public interest. *Blackwelder Furniture Co. v. Seilig Manuf. Co.,* 550 F.2d 189, 196 (4th Cir. 1977). In the R & R, the magistrate found that (1) while Plaintiff will be irreparably harmed to the extent that continuing haircuts violate his sincerely held religious beliefs, (2) the harm to Defendants if they were not able to enforce the Policy outweighs the Plaintiff's possible harm; and, in any event, (3) Plaintiff is unlikely to succeed on the merits of his RLUIPA claim. Accordingly, the magistrate recommended denial of Plaintiff's motion for injunctive relief.

Plaintiff argues that the magistrate erred both in finding that the harm to Defendants if the injunction were granted outweighs any harm suffered by the Plaintiff if it is denied and in finding that he has failed to show a sufficient likelihood of success on the merits of his claim to entitle him to the granting of a TRO. Further, Plaintiff objects that the R & R failed to address his request for a TRO and/or preliminary injunction "regarding an order to prohibit inmate participation in enforcing the SCDC grooming policy by participating in the forced grooming of the Plaintiff." The court considers each of Plaintiff's objections.

**(1) The balancing of the potential harms to the parties should the injunctive relief be granted/denied.**

The magistrate, citing *Hines v. South Carolina Department of Corrections*, 148 F.3d 353, 358 (4th Cir. 1998), found that the Policy causes the Plaintiff irreparable harm to the extent it violates Plaintiff's sincerely held religious beliefs. However, the magistrate further found that the "harm to Defendants if the injunction is granted outweighs any harm suffered by the Plaintiff." In so finding, the magistrate relied upon the affidavit of Robert Ward, the Department's Director of Division Operations. Ward sets forth numerous examples showing the importance of maintaining the Department's grooming Policy in order to maintain safety, sanitation, and security of the prison.

Plaintiff objects that his harm, which includes not only the violation of his religious beliefs but also the injuries he suffers from the use of force in ensuring his compliance with the Policy, far outweighs any harm which may come to Defendants from temporarily enjoining the enforcement of the Policy. Plaintiff reiterates that, according to his Rastafarian faith, the cutting of his hair distances him from God. He also describes the physical harm he suffers, including being sprayed in the face with CS gas while in shackles, then beaten and forcibly restrained while being shaved.

Plaintiff's claim is not frivolous and his harms are irreparable and substantial; however, in light of the special considerations that are involved in setting policy within a prison, the court is persuaded that the risk of harm to security and discipline within that environment arguably outweighs the restriction on this one aspect of an individual inmate's practice of his religion. *Morrison v. Garraghty*, 239 F.3d 648, 654 (4th Cir. 2001) ("[I]t has long been recognized that, within the prison environment, courts grapple with yet another set of special considerations - those dictated by the needs and problems inherent in a penitentiary."). Accordingly, the court finds that the magistrate did not err in recommending that the balance of harms weighs in favor of Defendants.

**(2)  The likelihood Plaintiff will succeed on the merits of his underlying claim.**

Where there is no imbalance of hardship in a plaintiff's favor, plaintiff must make a "strong or substantial showing of likelihood of success on the merits." *Direx Israel, Ltd. v. Breakthrough Medical Corp.*, 952 F.2d 802, 818 (4th Cir. 1991). The magistrate found that Plaintiff failed to make such a strong showing. Plaintiff objects that he has made such a showing.

Under RLUIPA, Plaintiff Blackness bears the initial burden of going forward with evidence to demonstrate a prima facie claim that SCDC's grooming policy, the physical enforcement of the policy by the guards and the punitive sanctions imposed designed to coerce him to comply with that policy constitute a substantial burden on the exercise of his religious beliefs. *See* 42 U.S.C. § 2000cc- 2(b). If Blackness establishes the prima facie existence of such a substantial burden, on which he bears the burden of persuasion, the SCDC shall bear the burden of persuasion to prove that any substantial burden on Blackness's exercise of his religious beliefs is *both* "in furtherance of a compelling governmental interest" *and* the "least restrictive means of furthering that compelling

governmental interest." 42 U.S.C. § 2000cc-1(a); § 2000cc-2(b). By its terms, RLUIPA is to be construed broadly in favor of protecting an inmate's right to exercise his religious beliefs. 42 U.S.C. § 2000cc-3(g) ("This chapter shall be construed in favor of a broad protection of religious exercise, to the maximum extent permitted by the terms of this chapter and the Constitution.").

### 1. Substantial Burden

The Nazarite Vow,[3] which forbids the cutting of hair, is part of the Rastafarian faith. Defendants do not contest the sincerity of Plaintiff's Rastafarian beliefs. The magistrate correctly found that a policy which requires hair to be cut, and ensures compliance by force, imposes a substantial burden to one of the Rastafarian faith.[4]

---

[3] The Nazarite Vow, from Numbers 6:1-21 (King James Version) reads in relevant part as follows:
> And the LORD spake unto Moses, saying, Speak unto the children of Israel, and say unto them, <u>When either man or woman shall separate themselves to vow a vow of a Nazarite, to separate themselves unto the LORD</u>: He shall separate himself from wine and strong drink, and shall drink no vinegar of wine, or vinegar of strong drink, neither shall he drink any liquor of grapes, nor eat moist grapes, or dried. All the days of his separation shall he eat nothing that is made of the vine tree, from the kernels even to the husk. <u>All the days of the vow of his separation there shall no razor come upon his head: until the days be fulfilled, in the which he separateth himself unto the LORD, he shall be holy, and shall let the locks of the hair of his head grow.</u>

[4] Defendants argue that the burden placed on Plaintiff is not "substantial" because he is allowed to practice other aspects of Rastafarianism and the prohibition on cutting of hair is not central to Plaintiff's beliefs. The magistrate rightly does not consider this argument. It is clear that RLUIPA bars inquiry into whether a particular belief or practice is "central" to a prisoner's religion, see 42 U.S.C. § 2000cc-5(7)(A). Accordingly, once it is established that a prohibition of cutting hair is a part of the Rastafarian faith, Defendants may not attack the relative importance of that tenet to the religion. *Cutter*, 125 S.Ct. at 2124 n.13. The Act does not, however, preclude inquiry into the sincerity of a prisoner's professed religiosity. Cf. *Gillette v. United States,* 401 U.S. 437, 457, 91 S.Ct. 828, 28 L.Ed.2d 168 (1971) (" '[T]he "truth" of a belief is not open to question'; rather, the question is whether the objector's beliefs are 'truly held.' " (quoting *United States v. Seeger,* 380 U.S. 163, 185, 85 S.Ct. 850, 13 L.Ed.2d 733 (1965))).

7

### 2. Compelling State Interest

Because SCDC's grooming policy imposes a substantial burden on Blackness's religious exercise, SCDC must establish that the policy serves a compelling government interest. To this end, Defendants present the affidavit of Robert Ward, who states that long hair poses increased risks to security, as an inmate can more easily hide contraband in long hair and can more easily alter his appearance should he escape. Ward also states that short hair is more hygienic than long hair and is more easily searched. The Fourth Circuit has already recognized that prison grooming Policies requiring short hair serve the compelling state interests of security, safety, and sanitation. *Hines*, 148 F.3d at 358.[5] Accordingly, the court finds that the magistrate correctly recommended that Defendants successfully showed that the Policy serves a compelling state interest.

### 3. Least Restrictive Means

Because it is clear that forced haircuts are a substantial burden on the free exercise of some religions and that prison policies requiring short hair do serve a compelling state interest, the only issue the court must decide is whether a policy which offers no exceptions for religious beliefs can be the least restrictive means. Most Circuits to have addressed this issue have held that prison grooming policies which, like the SCDC Policy, recognize no religious exceptions and allow the forced cutting of hair, can be the least restrictive option. *See Brunskill v. Boyd,* 141 Fed.Appx. 771

---

[5] Both the magistrate and Defendants rely heavily upon the Fourth Circuit's holding in *Hines*; however, the court notes that the Policy upheld in *Hines* was the older SCDC policy which allowed non-complying inmates to be placed in segregation rather than have their hair cut. *Hines*, 148 F.3d at 356 ("No prisoners are forcibly shaved or shorn. Instead, those inmates who refuse to comply with the Grooming Policy are reclassified to a more restrictive security level and moved to a higher security cell."). Further, because the claims in *Hines* were brought under the Constitution, *Hines* was analyzed under a less stringent standard than the "compelling state interest" and "least restrictive means" test of RLUIPA. Accordingly, the court only relies upon *Hines* to stand for the assertion that grooming policies do serve a compelling state interest.

(11th Cir. May 10, 2005) (Florida Department of Corrections's hair length policy which required the forced cutting of hair was the least restrictive means in furthering compelling governmental interests in the security, health, and safety of inmates and staff, and, thus, did not violate the Religious Land Use and Institutionalized Persons Act (RLUIPA)); *Hoevenaar v. Lazaroff*, 422 F.3d 366 (6th Cir. 2005) (remanding district court's holding that Ohio prison regulation restricting hair length without exception and allowing forced cutting of hair violated RLUIPA for failing to give proper deference to expertise and experience of prison officials who testified that the policy was the least restrictive means available); *Diaz v. Collins*, 114 F.3d 69 (5th Cir. 1997) (Texas regulation requiring short hair was the "least restrictive means" under RFRA); *Hamilton v. Schriro*, 74 F.3d 1545 (8th Cir. 1996) (prison hair length regulation was least restrictive means of maintaining prison's interest in safety and security).  *But see*, *Williams v. Snyder*, 2005 WL 2346964, \*2 (7th Cir. Sept. 26, 2005) (noting that "contrary to his assertions," plaintiff had not been required to cut his hair but "was also given the option of taking down his hair for a security inspection"); *Warsoldier v. Woodford*, 418 F.3d 989 (9th Cir. 2005) (grooming policy of California Department of Corrections requiring male inmates to maintain hair no longer than three inches imposed substantial burden on Native American inmate's religious practice within meaning of RLUIPA *notwithstanding that he was not physically forced to cut his hair,* where he was subjected to punishments including confinement to his cell and reclassification into less desirable workgroup).

     Within the Fourth Circuit, however, it has not been established that a grooming policy which offers no alternative to short hair can be the least restrictive workable policy.  In fact, prior to the enactment of RLUIPA, the Fourth Circuit upheld the District Court for the Eastern District of Virginia's finding that a policy of forced haircuts regardless of religious objections violates the First

9

Amendment. *Gallahan v. Hollyfield,* 516 F.Supp. 1004 (E.D.Va.1981), *aff'd,* 670 F.2d 1345 (4th Cir.1982). In that case, Plaintiff Gallahan, a Native American inmate whose religious beliefs proscribed the cutting of hair, brought a civil action under 42 U.S.C. § 1983, claiming that a Virginia prison grooming policy violated his constitutional right to free exercise of his religious beliefs. 670 F.2d at 1346. In 1980, a Virginia prison regulation, Division of Institutional Services Guideline ("guideline") 864, required all inmates to keep their hair trimmed so that it did not extend below the top of the collar. *Id.* When Gallahan entered a Virginia prison, officials compelled him to cut his hair so that it complied with guideline 864, and Gallahan thereafter filed suit. *Id.* The district court found that Gallahan had a sincere religious belief requiring him to wear his hair long and that as applied in Gallahan's case, the grooming policy violated the First Amendment; therefore, the court enjoined the defendants and their successors from cutting plaintiff's hair. *Id.*

The Fourth Circuit affirmed, holding that "[p]rison regulations which affect a prisoner's right to worship must be reasonably and substantially justified by considerations of prison discipline and order and further must be in a form substantially warranted by the requirements of prison safety and order." 670 F.2d at 1346. The court noted that the defendants' asserted reasons for the grooming policy were "either overly broad or lacking in substance." *Id.* In support of their motion for summary judgment, defendants had not offered any empirical data demonstrating the compelling interests the state had in enforcement of the grooming policy, although they later asserted that such data was available. *Gallahan,* 516 F.Supp. at 1007 (order on motion to reconsider). Defendants also offered no evidence that there were no less restrictive alternatives to the regulation. *Id.*

The *Gallahan* case reflects the Fourth Circuit's efforts to protect the religious rights of inmates under the strict scrutiny test of *Sherbert v. Verner,* 374 U.S. 398, 403, 83 S.Ct. 1790, 10

L.Ed.2d 965 (1963), while at the same time recognizing the expertise and needs of professional prison officials in addressing difficult issues of prison administration, such as security and order. *Gallahan,* 670 F.2d at 1346, citing *Sweet v. South Carolina Dept. of Corr.,* 529 F.2d 854, 863 (4th Cir.1975); *Brown v. Payton,* 437 F.2d 1228, 1231 (1971); *Abernathy v. Cunningham,* 393 F.2d 775 (4th Cir.1968). *See also Pell v. Procunier,* 417 U.S. 817, 827, 94 S.Ct. 2800, 41 L.Ed.2d 495 (1974) (mandating court deference to expert judgment of prison officials in matters of prison administration unless substantial evidence in the record indicates their response is exaggerated). Although the constitutional test applied in the 1982 *Gallahan* case was abrogated by subsequent Supreme Court cases that eliminated strict scrutiny for First Amendment claims in the prison context, *Hines v. South Carolina Dept. of Corr.,* 148 F.3d 353, 358 (4th Cir.1998), citing *Employment Division, Dep't of Human Resources v. Smith,* 494 U.S. 872, 876-79, 110 S.Ct. 1595, 108 L.Ed.2d 876 (1990) (formulating a "generally applicable regulation" test); *O'Lone v. Estate of Shabazz,* 482 U.S. 342, 349, 107 S.Ct. 2400, 96 L.Ed.2d 282 (1987) (formulating a "reasonably related to legitimate penological interests" test), RLUIPA returns the strict scrutiny test to prison litigation. Thus, *Gallahan* and related cases are instructive for district courts in the Fourth Circuit when applying the strict scrutiny test of RLUIPA while also deferring as required to the expertise of prison officials. *See Cutter v. Wilkinson,* 544 U.S. 709, 125 S.Ct. 2113, 2123, 161 L.Ed.2d 1020 (2005) (noting that courts applying RLUIPA must give "due deference to the experience and expertise of prison and jail administrators in establishing necessary regulations and procedures to maintain good order, security and discipline, consistent with consideration of costs and limited resources") (citations to congressional records omitted).

    Recently, under the RLUIPA strict scrutiny test, the Western District of Virginia, applying

the *Gallahan* rationale, found that a grooming policy requiring short hair and penalizing inmates for non-compliance was the least restrictive means available; however, that court relied heavily upon the fact that an inmate could *choose* to be placed in segregation rather that comply with the grooming policy. *Ragland v. Angelone*, 2006 WL 679773 (W.D. Va. March 14, 2006) ("Ragland was not forced to cut his hair or beard. He continues to practice this aspect of his religious beliefs. This fact alone weighs heavily in favor of finding that the restrictions are proper."); *see also DeBlasio v. Johnson*, 128 F.Supp.2d 315 (E.D. Va. 2000) (citing inmate for disciplinary violations and assigning him to segregation for refusing to comply with grooming policy does not violate constitutional rights).

Considering the Fourth Circuit's holding in *Gallahan* and the rulings in the more recent cases from Virginia, the court finds that it is far from clear that the SCDC Policy will be found to be the least restrictive means available. Nonetheless, the court agrees with the magistrate that Plaintiff does not make the strong showing of likelihood of success necessary to justify a preliminary injunction. As both *Gallahan* and *Cutter* make clear, courts must defer appropriately to the expertise of prison officials in matters of prison administration even when reviewing a prison regulation under the RLUIPA strict scrutiny standard. *Cutter,* 125 S.Ct. at 2123; *Ragland*, 2006 WL 679773, *10. Ward, a Director of Division Operations at SCDC, explained in an affidavit that the current Policy is the least restrictive available. Ward claims that the former policy allowing inmates to be segregated rather than comply with the Policy had become unworkable due to budgetary and space constraints.

While the court finds troubling the fact that SCDC operated successfully for many years under a grooming policy which allowed for exceptions, the court must defer to the prison official's testimony that the old policy has become cumbersome and impossible. Further, the court recognizes

that the fact that one prison operates safely while under a less restrictive regulation is no evidence that another prison could so operate. *Ragland*, 2006 WL 679773, *10 ("To accept the logic of this argument the court would have to conclude that the least restrictive means necessary to serve the interests of one jurisdiction's prison system is the only lawful means to serve the same interests of another jurisdiction's system though they may be entirely different in terms of their history, inmate population, structure and funding.")  Given the deference courts are required to show to opinions of experienced prison officials, Plaintiff cannot show a substantial likelihood of success to support the extreme remedy of a TRO.

**(3)  Plaintiff's claim that he was forcibly groomed of *by other inmates*.**

The magistrate did not address Plaintiff's claim that fellow inmates, rather than SCDC employees, performed the haircuts on Plaintiff.  If inmates are involved in forcing Plaintiff's compliance with the Policy, it is in express violation of SCDC Policies No. 29 providing that all "services such as. . .barber. . . will be provided by SCDC employees" and No. OP-22.14, "Inmate Disciplinary System," which forbids inmates from "exerting any authority over another inmate, to include (h) enforcing any SCDC or institutional or other governmental agency rule or regulation." According to SCDC's own policies, an inmate so exerting authority over another inmate is deemed to have committed a Level 3 Offense.  In addition to being a violation of SCDC internal policies, Plaintiff contends that the practice of allowing inmates to participate in grooming him violates his Eighth Amendment right to be free from cruel and unusual punishment.  Plaintiff therefore objects that the magistrate erred in failing to consider this claim for TRO and/or preliminary injunction.

Plaintiff offers no corroborating evidence to support his claim that SCDC officers allow fellow inmates to participate in forcibly grooming him.  He submits no affidavits of prisoners who

witnessed an inmate grooming Plaintiff,[6] nor has any Defendant admitted to allowing such inmate participation.[7] Generally, bald assertions and unsupported self-serving statements do not prevent dismissal of a complaint under Rule 12(b)(6). *Young v. City of Mount Ranier*, 238 F.3d 567 (4th Cir. 2001). Accordingly, because his entire § 1983 claim is dependant on his own unsupported assertion, the court finds that Plaintiff has not made a sufficient showing of likelihood of success on the merits of this claim to support the granting of a TRO.[8] Therefore, to the extent the magistrate erred in failing to address this portion of Plaintiff's motion, such error was harmless.

---

[6] Plaintiff does submit the affidavits of several fellow inmates who saw officers using force against him to ensure his compliance with the Policy; however, none of these inmates claims to have witnessed a fellow inmate participating in the use of force.

[7] Plaintiff submits the Admissions of Defendant L. Bessinger, who admitted that "under no circumstances will any S.C.D.C. inmate enforce any S.C.D.C. or institutional or other governmental agency rules or regulations."

[8] Should more evidence supporting Plaintiff's version of the facts come to light, the court does not rule out the possibility that Plaintiff may have a viable §1983 claim for violation of his Eighth Amendment rights. The Eighth Amendment prohibits punishments which, although not physically barbarous, involve unnecessary and wanton infliction of pain; among unnecessary and wanton inflictions of pain are those that are totally without penological justification. *Rhodes v. Chapman,* 452 U.S. 337, 101 S.Ct. 2392 (1981). Certainly, allowing *fellow inmates,* rather than corrections officers, to forcibly shave him can serve no legitimate penological interest and may very well constitute "cruel and unusual punishment."

## IV.  CONCLUSION

For the reasons set forth above, the court adopts the R & R's recommended disposition and denies Plaintiff's motion for preliminary injunction.  The court notes that this decision does not constitute the final decision on the merits of Plaintiff's claims; rather, it finds that he has failed to overcome the high burden necessary for preliminary relief.

It is therefore **ORDERED** that Plaintiff Blackness' Motion for Temporary Restraining Order and/or Preliminary Injunction is hereby **DENIED**.

**AND IT IS SO ORDERED**.

PATRICK MICHAEL DUFFY
United States District Judge

**Charleston, South Carolina**
**March 31, 2006.**

15