**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA**

Kevin Smith, a/k/a Bar-None          )
Royal Blackness, #164920,            )
       Plaintiff,                  )
                            )          C.A. No. 04-1819-PMD-BM
v.                                   )
                            )
Jon Ozmint, Director of the South    )          **ORDER**
Carolina Department of Corrections,  )
et. al.,                             )
       Defendants.                 )
_____)

        Proceeding *pro se*, Plaintiff Kevin Smith, a.k.a., Bar-None Royal Blackness ("Plaintiff"), a

frequent filer in this court, filed his 304 page Complaint (including exhibits) on June 23, 2004,

naming forty-three Defendants.   Plaintiff seeks relief pursuant to 42 U.S.C. § 1983 from the

Defendants for alleged violations of his constitutional rights as well as the Religious Land Use and

Institutionalized Persons Act ("RLUIPA").   Plaintiff also asserts state law claims for defamation,

assault and battery, and violations of various state statutes.   Defendants have filed motions for

summary judgment in this matter, to which Plaintiff responded.   In accordance with 28 U.S.C. § 636

(b)(1)(B), this matter was referred to United States Magistrate Judge Bristow Marchant, who created

a report and recommendation ("the R&R").   Magistrate Judge Marchant did an admirable job in

sifting through the mass of pleadings and exhibits submitted by Plaintiff, and in writing a

comprehensive R&R addressing Plaintiff's many and varied claims.   Ultimately, the Magistrate

Judge recommended that Defendants' motions for summary judgment be granted as to Plaintiff's

§ 1983 claims, and that this case be dismissed.   The R&R further recommended that Plaintiff's state

law claims be dismissed without prejudice, to be pursued in state court should Plaintiff so desire.

        The R&R makes only a recommendation to the court.   The recommendation has no

1

presumptive weight, and the responsibility for making a final determination remains with the court. *Mathews v.* and recommendation within ten days after bei *Weber*, 423 U.S. 261, 269 (1976). A party may object, in writing, to a report ng served with a copy of that report. 28 U.S.C. 636 (b)(1). This court is charged with conducting a *de novo* review of any portion of the R&R to which a specific objection is registered and may accept, reject, or modify, in whole or in part, the recommendations contained in that report. 28 U.S.C. § 636 (b)(1). Any written objection must specifically identify the portions of the R&R to which objections are made and the basis for those objections. *Id.*

Plaintiff filed timely objections to the R&R. After a review of the record, the R&R, and Plaintiff's objections, the court finds that the Magistrate Judge summarized the facts and applied the correct principles of law. Accordingly, the R&R is adopted in full and specifically incorporated into this Order.

## Legal Standard for Summary Judgment

To grant a motion for summary judgment, the court must find that "there is no genuine issue as to any material fact." Fed. R. Civ. P. 56(c). The judge is not to weigh the evidence but rather must determine if there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). All evidence should be viewed in the light most favorable to the nonmoving party. *Perini Corp. v. Perini Constr., Inc.*, 915 F.2d 121, 123-24 (4th Cir. 1990). "[W]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, disposition by summary judgment is appropriate." *Teamsters Joint Council No. 83 v. Centra, Inc.*, 947 F.2d 115, 119 (4th Cir. 1991). "[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on

which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The "obligation of the nonmoving party is 'particularly strong when the nonmoving party bears the burden of proof.'" *Hughes v. Bedsole*, 48 F.3d 1376, 1381 (4th Cir. 1995) (quoting *Pachaly v. City of Lynchburg*, 897 F.2d 723, 725 (4th Cir. 1990)). Summary judgment is not "a disfavored procedural shortcut," but an important mechanism for weeding out "claims and defenses [that] have no factual bases." *Celotex*, 477 U.S. at 327.

## DISCUSSION

**Objection No. 1:  Did the Magistrate Judge err in finding that Plaintiff failed to submit evidence in support of his claim that SCDC's grooming policy violates RLUIPA?**

Plaintiff objects that the Magistrate Judge erred in finding that SCDC's policy requiring short hair and no beards, and which offers no alternative for sincerely held religious beliefs, is the least restrictive workable policy.[1] Plaintiff suggests several alternative means by which South Carolina Department of Corrections ("SCDC") could further its compelling interest in security without requiring prisoners with religious objections to cut their hair. (Objections at 3 - 6.) For example, Plaintiff asserts that his long hair would not pose a security risk if he (1) remained in a higher security level, (2) submitted to random hair searches prior to exiting and re-entering his cell, (3) submitted documented proof of the sincerity of his religious beliefs, and/or (4) wore a hair covering when outside his cell subject to garment searches before re-entering the cell. Plaintiff asserts that these precautions would have minimum or no cost and would "satisfy and/or meet the penological

---

[1] As the R&R explains more fully, RLUIPA provides, in relevant part, that "[n]o government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution. . . even if the burden results from a rule of general applicability," unless the government establishes that the burden furthers "*a compelling government interest*," and does so by "*the least restrictive means*." 42 U.S.C. § 2000cc-1(a)(1)-(2) (emphasis added).

3

objective-goals Defendants SCDC might have concerning the growing of long hair/beards." (Id. at 6.) Plaintiff objects that the Magistrate Judge erred in failing to address this least restrictive argument in the R&R. Plaintiff also objects that the Magistrate Judge failed to "explain why [SCDC's] female prisoners" and the inmates in the Federal Bureau of Prisons ("FBOP") were not required to "adhere to equally strict grooming policy." (Id. at 6 - 7.)

The court finds these objections to be without merit. First, on pages 8 - 9 of the R&R, the Magistrate Judge explains why the other less restrictive means attempted by the SCDC and cited by Plaintiff are not viable:

> [T]he old policy [placing inmates who refused to cut their hair in M.S.U.] exacerbated problems the SCDC was having with shortage of space in SMUs, the units where inmates who pose security risks and threats to the safety of other inmates and staff are kept. The change in policy serves the purpose of making additional cell space available in SMU units to inmates who pose security threats and/or are guilty of major disciplinary violations, instead of to inmates who are simply opposed to the SCDC grooming standards in order to grow their hair. Defendants have also submitted evidence that inmates who wanted to be in the SMU for reasons other than a religious objection to the grooming policy, such as avoiding work assignments or in order to obtain a single cell, could choose not to cut their hair. Defendants also point out that housing inmates in the SMU requires additional manpower, leading to personnel and staffing problems. Finally, Defendants point out that the danger posed by inmates having long hair and beards is the same, whether or not they are in the SMU, which dangers were among the original penological reasons for not allowing long hair in the first place. *See generally*, Ward Affidavit, ¶¶ 4 - 10.

R&R at 8 - 9. In finding that the current Policy is the least restrictive workable policy, and that the alternatives suggested by Plaintiff were unworkable, the R&R properly relied upon and gave deference to the testimony of Mr. Ward, a Director of Division Operations at SCDC. *See Cutter v. Wilkinson,* 544 U.S. 709, 125 S.Ct. 2113, 2123, 161 L.Ed.2d 1020 (2005) (noting that courts applying RLUIPA must give "due deference to the experience and expertise of prison and jail administrators in establishing necessary regulations and procedures to maintain good order, security

4

and discipline, consistent with consideration of costs and limited resources") (citations to congressional records omitted).  Accordingly, the court finds that the Magistrate Judge properly considered the alternative means suggested by Plaintiff in determining that the current grooming Policy was the least restrictive means of furthering SCDC's interest in security.

The court also rejects Plaintiff's argument that, because FBOP's inmates and SCDC's female inmates are not required to adhere to an equally strict grooming policy, the Policy in force at Kirkland is not the "least restrictive means."  "To accept the logic of this argument the court would have to conclude that the least restrictive means necessary to serve the interests of one jurisdiction's prison system is the only lawful means to serve the same interests of another jurisdiction's system though they may be entirely different in terms of their history, inmate population, structure and funding."  *Ragland v. Angelone*, 420 F. Supp. 2d 507, 518 (W.D. Va. 2006).  As such, the fact that one prison operates safely while under a less restrictive regulation is no evidence that another prison could so operate.  *See id.*

For these reasons, the court finds that Plaintiff's first objection is without merit, and adopts the Magistrate Judge's recommendation regarding Plaintiff's RLUIPA claim.

**Objections No. 2, 4, 6, 8, 9, and 14:  Did the Magistrate Judge err in finding that Defendants' failure to follow SCDC Policies did not constitute a violation of Plaintiff's constitutional rights?**

Plaintiff presents evidence of several instances in which Defendants allegedly violated the "rules, regulations, and policies promulgated by the Director" of the SCDC.  For example, Plaintiff submits affidavits asserting (1) that a fellow inmate cut his hair in violation of SCDC Policy No. Op-22.11 which provides that SCDC employees will provide barber services(Objection No. 2, at 7); (2)

that he was placed in a "restraint chair" during the use of force on August 13, 2003, in violation of SCDC Policy No. Op-22.01 which provides that the restraint chair is only to be used in limited circumstances (Objection No. 4, at 18 - 20);[2] (3) that his preexisting magazine subscription was not delivered to him in the M.S.U., in violation of SCDC Policy No. Op-22.11 (Objection No. 6, at 21 - 22); (4) that he was denied access to his "adult publications" for approximately one year before SCDC Policy prohibited possession of such publications (Objection 6, at 23 - 24); (5) that his personal property was not properly inventoried, placed in a duffle bag, and secured as required by SCDC Policy No. Op-22.03 (Objection No. 9, at 30); and (6) that a food service supervisor was not present during the serving of M.S.U. prisoners' meal trays to inspect and insure the quality of the food in violation of SCDC Policy No. ADM-16.05 (Objection No. 14, at 44). Plaintiff also asserts (7) that Defendants failed to investigate his grievances/complaints and initiated false one-sided investigations always in favor of M.S.U. prison guards and staff in violation of SCDC grievance procedures (Objection No. 8, at 27 - 29).

The Magistrate Judge found that, even assuming that Plaintiff had proven that Defendants' had violated SCDC Policies, these allegations failed to state a claim of constitutional magnitude. Accordingly, the Magistrate Judge recommended that these claims be dismissed because they do not give rise to a federal constitutional claim under § 1983. (R&R at 24, 30, 37, 45.)

Plaintiff asserts that the Magistrate Judge erred in his recommendations. He claims that because the SCDC Policies were established to protect the inmates' rights, he has a "liberty interest"

---

[2] SCDC Policy provides that the restraint chair should be used when (1) the inmate presents an imminent danger of physical harm or injury to self or others, (2) the inmate destroys and/or causes or attempts to cause damage to state property, or (3) the inmate throws, attempts to throw, or defaces with human waste or other substance, another person, him/herself, and/or state property.

in Defendants' following these Policies.  Plaintiff asserts that the Magistrate Judge overlooked "clearly established law in this circuit" in support of this assertion.  Plaintiff cites *United States v. Heffner*, 420 F.2d 809, 811 (4th Cir. 1970), in which the Fourth Circuit states that "an agency of the government must scrupulously observe rules, regulations which it has established; when it fails to do so, its actions cannot stand and the court will strike it down."  Plaintiff also cites *Green v. Catoe*, 220 F.3d 220 (4th Cir. 2000), which provides that "many state-created rights have been accorded the status of liberty or property interest within the meaning of the Fourteenth Amendment."  While "a state has the authority to create, or not," each of these rights, once created, the Due Process clause guarantees "that the state-created right is not arbitrarily abrogated."  *Id.*  Relying on the language of these and similar cases, Plaintiff asserts that the SCDC Policies in place at the M.S.U are state-created liberty interests, such that the failure to follow these Policies constitutes a violation of Plaintiff's Due Process rights.

The court finds these objections to be without merit.  The case law cited by Plaintiff stands for the proposition that an agency's failure to afford an individual procedural safeguards required under its own regulations may result in the invalidation of the ultimate administrative determination. *See, e.g., United States ex rel. Accardi v. Shaughnessy,* 347 U.S. 260, 74 S.Ct. 499, 98 L.Ed. 681 (1954) (in which the Supreme Court vacated a deportation order rendered by the Board of Immigration Appeals because the procedures leading to the order failed to comply with governing regulations promulgated by the Immigration and Naturalization Service); *Delgado-Corea v. INS,* 804 F.2d 261 (4th Cir. 1986); *Heffner*, 420 F.2d at 811 (overturning tax convictions obtained with use of statements obtained by Internal Revenue Service); *Green*, 220 F.3d 220 (habeas petitioner had protected liberty interest in state-created right to new trial based on his use of peremptory

challenge to juror who should have been excused for cause). Plaintiff attempts to expand this doctrine to mean that a violation of *any* SCDC Policy constitutes a denial of his Due Process rights for which § 1983 damages are available. Such is clearly not the rule of these cases. While "states may under certain circumstances create liberty interests which are protected by the Due Process Clause," not all state regulations governing the day-to-day management of prisons create such liberty interests. *Sandin v. Conner,* 515 U.S. 472, 484, 115 S.Ct. 2293, 2300 (1995). A plaintiff seeking to allege a procedural due process violation based on a state created liberty interest must not only show it is derived from mandatory language in a regulation, but also that it imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id.* In other words, absent "atypical and significant hardship," a change in the conditions of confinement simply does not inflict a cognizable injury that merits constitutional protection, regardless of the motivation of the official when making the change. *Id.* After *Sandin*, "prisoners may no longer peruse state statutes and prison regulations searching for the grail of limited discretion." *Orellana v. Kyle,* 65 F.3d 29, 31 (5th Cir. 1995). Instead, the court focuses on the nature of the deprivation itself.

In this case, the Magistrate Judge found, and the court agrees, that Plaintiff has no constitutional right to the delivery of his magazine subscriptions, the provision of barber services and grievance procedures, the inventory of his personal property, or even freedom from the "restraint chair" during a valid use of force. The *Sandin* standard invokes a comparison of the punitive restraint with what an inmate can expect from prison life generally to determine whether there has resulted an "atypical, significant deprivation," *Williams v. Ramos,* 71 F.3d 1246, 1249 (7th Cir. 1995), which presents "dramatic departures from the basic conditions and ordinary incidents

of prison sentences." *Moorman v. Thalacker,* 83 F.3d 970, 972 (8th Cir. 1996). While Plaintiff is obviously dissatisfied with these conditions of his confinement, the court - applying the *Sandin* standard - finds these conditions do not constitute an atypical and significant hardship. As Plaintiff has not alleged any atypical and significant hardship, he has failed to allege the deprivation of a federally recognized liberty interest; therefore, the violation of the Policies at issue, while potentially giving rise to a claim under state law, does not - by itself - constitute a constitutional violation for which there is recovery under § 1983. As such, the court finds that the Magistrate Judge correctly found that even if Defendants did violate the SCDC Policies, Plaintiff has not alleged a constitutional injury.

**Objection 3:  Did the Magistrate Judge err in finding that the force used on November 9, 2002 and August 11, 2003 was not excessive?**

Regarding the August 11, 2003 use of force, Plaintiff asserts that the Magistrate Judge improperly applied the summary judgment standard by failing to give proper consideration to Plaintiff's affidavits and the affidavits of inmates Allah,[3] Hudson,[4] Corey,[5] Lindsey[6] and to the

---

[3] Inmate Al-Matotauir S. Allah claims that, on August 13, 2003, he watched as MSU officials "rushed in on [Plaintiff], physically assaulting him, gassing (macing) him, and drug him to the barber chair to be forcefully groomed." Allah asserts that, prior to the use of force, Plaintiff "stated that he wasn't stagging (sic), he was in full body restraints and would be a fool to do so." Allah also states that "Plaintiff was taking (sic) back to his cell and he was complaining that he couldn't see because Cpl. Reardon had maced him directly in his eyes. However, he was denied a shower and forced to remain in such condition." (Allah Affidavit; Pl. Resp. in Opp. to Sum. Judg., Exhibit A [235].)

[4] Inmate Kevin Hudson's affidavit reads as follows: "On August 13, 2003 approximately 3:00 pm I over heard inmate Barnone R. Blackness screaming, how could I be stagging (sic) in leg irons & handcuffs, only a fool would do that. A few second later I heard a lot of banging & shoe scuffling which led me to believe the plaintiff was being physically assaulted. Later the plaintiff was complaining he couldn't see because someone spaid (sic) mase (sic) in his eyes. He was then taken to the barber quarters to get a hair cut." (Hudson Affidavit; Pl. Resp. in Opp. to Sum. Judg., Exhibit

August 13, 2003 videotape. Plaintiff claims that, in discounting these affidavits, the Magistrate Judge "made an improper credibility determination." (Objections at 13.) "Moreover, the August-13-2003 videotape itself corroborates at least some of Plaintiff Blackness allegations." (Objections at 14.) Regarding the use of force on November 9, 2002, Plaintiff objects that the "Magistrate Judge improperly applied the summary judgment standard by failing to give proper consideration to Plaintiff Blackness' affidavit and affidavits of Dr. Sanyika Askari, Bobby Thompson and the November 9, 2002 videotape." (Objections at 15.)

The court first notes that, contrary to Plaintiff's assertion, the Magistrate Judge did consider the affidavits at issue before determining that "the evidence in this case does not show excessive force was used." (R&R at 18.) The court has also reviewed the affidavits and videotapes in question and agrees with the Magistrate Judge's determination. Regarding the use of force on August 13, 2003, the affidavits of Hudson, Corey, and Lindsey only state that these affiants *heard* the use of force. Accordingly, their testimony is not compelling and the Magistrate Judge did not err in discounting it. While Allah testified that he witnessed the use of force, he describes no use

---

A [235].)

[5]Inmate Tim Corey testifies that he "witnessed by sound, by proper location of my cell being beside the B-Rec field here at the Kirkland Correctional Super Max Unit" the events of August 13, 2003. He states that he "overheard [Plaintiff] state clearly, And I "quote" I am not stagging, I'm in full restraints, that would be stupid of me." Tim Corey then "heard a bunch of banging around and again heard [Plaintiff] yell and I quote again, get off of me, I haven't done anything, please leave me alone, Don't hit me with the shield I haven't done anything. I'm in restraints. Un-quote." (Corey Affidavit; Pl. Resp. in Opp. to Sum. Judg., Exhibit A [235].)

[6]Inmate Roy G. Lindsey averred that he "heard Blackness tell MSU officers that they were not going to put their hands on him, that he was in full restraints, and that he was not stagging (sic). Then a lot of voices that I couldn't make out what was being said. Then a ruccus (sic) took place when the officers attacked, and gassed Inmate Blackness. I don't know what took place after Inmate Blackness was forcibly removed from the walk." (Lindsey Affidavit; Pl. Resp. in Opp. to Sum. Judg., Exhibit A [235].)

of force that is not also depicted in the videotape from August 13, 2003.  The Magistrate Judge reviewed this videotape and correctly found that it does not depict an unconstitutional use of force under the circumstances.  (Id. at 16 - 19.)  Accordingly, the affidavits of Allah, Hudson, Corey, and Lindsey do not create a genuine issue of material fact that the use of force on August 13, 2003 was excessive.

In their affidavits, Askari and Thompson describe the use of force that is recorded in the videotape taken on November 9, 2002.  In relevant part, Askari averred that, on November 9, 2002, he "witnessed said prison guards repeatedly ramming Prisoner Blackness' head into the wall, poking at his eyes with their hands, punching and kicking him in his body, slapping him several times hard across the face, and then holding him down, face first, in scalding hot water while in mechanical restraints."  (Askari Affidavit; Pl. Resp. in Opp. to Sum. Judg., Exhibit A [235].)  Thompson stated that he "watched in pure fear as the same staff members listed above continued to punch and hit Inmate Blackness after he was bound and chained and being escorted to the barber chair."  (Thompson Affidavit; Pl. Resp. in Opp. to Sum. Judg., Exhibit A [235].)  The court has reviewed the videotape of these events and finds that it depicts none of the abuses described by affiants.[7]  While certain portions of the action in the videotape are obscured by the bodies of the M.S.U. officials, the court has no reason to believe that Askari and Thompson - who were in their cells at the time - could have been in a better position to observe the use of force.  Simply put, the videotape of the use of force plainly contradicts the affiants' version of events; therefore, no reasonable juror could credit the testimony of these witnesses.  *See Sylvia Dev. Corp. v. Calvert County, Md.,* 48 F.3d

---

[7] The R&R, which is incorporated into this Order, does an excellent job summarizing the content of the videotapes.  (R & R at 15.)

11

810, 818 (4th Cir.1995) (explaining that while the party opposing summary judgment is entitled to the benefit of inferences that can be drawn from the evidence, "[p]ermissible inferences must still be within the range of reasonable probability" and that "[w]hether an inference is reasonable cannot be decided in a vacuum; it must be considered in light of the competing inferences to the contrary" (internal quotation marks omitted)).  As such, the court finds that these affidavits also do not raise a genuine issue of material fact in support of Plaintiff's excessive force claim.

Considering all of the evidence, including the videotapes and the affidavits submitted by Plaintiff, the court finds that Plaintiff has not presented a genuine issue of material fact that the force used on either November 9, 2002 or August 13, 2003 was excessive.  Accordingly, for the reasons as stated in the R&R, the court adopts the Magistrate Judge's recommendation that summary judgment be granted as to these excessive force claims.

**Objections 5 and 7:  Did the Magistrate Judge err in finding that Plaintiff did not state a constitutional violation in his claims regarding visitation and photographs?**

Plaintiff objects that the Magistrate Judge did not address Plaintiff's evidence supporting his claim that the "photograph policy is punitive in measure and violative of this Plaintiff's first amendment rights."  (Objection No. 5, at 20.)  Specifically, Plaintiff presented affidavits asserting that prior to Defendants' implementation of a policy forbidding personal photographs, Plaintiff and fellow M.S.U. prisoners were allowed to receive personal photographs in their correspondence for numerous years without incident.  (Id. at 21.)  Plaintiff also objects that the Magistrate Judge erred in failing to address Plaintiff's fundamental liberty interest in maintaining personal relationships through visitations.  (Objection No. 7, at 24.)

The court has reviewed Plaintiff's claims regarding photographs and visitations and finds

12

that the Magistrate Judge adequately addressed them in the R&R. Prison officials have wide ranging deference with respect to custody conditions for inmates in administrative segregation units, and denying segregated inmates their photographs, magazines, publications, or similar materials has been recognized as a legitimate incentive for inmates to modify their behavior to obtain release back to a less restrictive facility. (R&R at 25-26.) Further, limiting visits to such inmates is a necessary security measure and restrictions on Plaintiff's visitation privileges under the facts presented do not amount to a violation of Plaintiff's constitutional rights. (R&R at 23.) *See also Overton v. Bazzetta*, 539 U.S. 126, 123 S.Ct. 2162 (2003) ("[Limiting visitors to inmates in maximum security units] promote[s] internal security, perhaps the most legitimate penological goal, by reducing the total number of visitors and by limiting disruption. . . . Withdrawing visitation privileges for a limited period in order to effect prison discipline is not a dramatic departure from accepted standards for confinement conditions."). Accordingly, for the reasons as explained in the R&R, the court finds that Plaintiff's claims fails to state a claim of constitutional magnitude.

**Objections No. 10 and 14: Did the Magistrate Judge err in finding that Plaintiff had not presented a genuine issue of material fact in support of his conditions of confinement claims?**

Plaintiff asserts that the Magistrate Judge erred in failing to consider his affidavit and the affidavits of his fellow inmates in support of his claims (1) that "he is constantly being exposed to life threatening conditions of confinement within the maximum-security-unit in the form of" poor ventilation, mold, rust, unsafe drinking water (Objection No. 10, at 32 - 33), and (2) that he is "being deprived an adequate amount of food to sustain his health and well being" (Objection No. 14, at 43 - 44). Plaintiff claims that the Magistrate Judge erred by improperly discounting the affidavits

submitted in support of the claim and the relying solely on an affidavit of Defendant Bernard McKie "who is a subordinate employee of the Defendant Jon Ozmint et al, who has submitted no form of evidence to refute Plaintiff and fellow prisoners' sworn testimony."  (Id. at 34.)

The court finds Plaintiff's objections to be without merit.  As the Magistrate Judge noted on page 44 of the R&R,  "In the context of a conditions-of-confinement claim, to demonstrate that a deprivation is extreme enough to satisfy the objective component of an Eighth Amendment claim, a prisoner must 'produce evidence of a serious or significant physical or emotional injury resulting from the challenged conditions,' or demonstrate a substantial risk of such serious harm resulting from the prisoner's unwilling exposure to the challenged conditions."  *Shakka v. Smith*, 71 F.3d 162, 166 (4th Cir. 1995); *Strickler v. Waters,* 989 F.2d 1375, 1381 (4th Cir. 1993) (noting that "in order to withstand summary judgment on an Eighth Amendment challenge to prison conditions a plaintiff must produce evidence of a serious or significant physical or emotional injury resulting from the challenged conditions.").  In this case, Plaintiff has failed to produce sufficient evidence of injury as a result of these alleged conditions of confinement.  (R&R at 43 - 44.)  The court agrees that the general and conclusory allegations by Plaintiff and his fellow inmates, even when made in proper affidavit form, are insufficient to withstand a motion for summary judgment on these causes of action. (Id.)  Accordingly, the court adopts the recommendation of the Magistrate Judge, and grants summary judgment as to these claims.

**Objections No. 11 and 12:  Did the Magistrate Judge err in finding that Plaintiff's claims regarding (1) the lack of clocks and (2) the use of restraints during outdoor recreation, doctor visits, and non-contact visitation failed to state unconstitutional conditions of confinement?**

14

Plaintiff asserts that the Magistrate Judge erred in finding that the failure to provide clocks and/or calenders did not constitute an unreasonable condition of confinement. He asserts that Defendants have offered no viable reason for Plaintiff and prisoners in the M.S.U. to be deprived of possessing a means to determine the time of day via watch-calender clock inside each isolation cell. (Objection No. 11, at 36 - 37.) The court disagrees. On pages 41 and 42 of the R&R, the Magistrate Judge discusses several reasons provided by Defendants for denying inmates of the M.S.U. with clocks:

> Similarly, the installation of clocks in cells would result in a substantial expense, both for installation and for maintenance and repair. [Warden] McKie attests that the installation of clocks within cells would also create substantial security concerns, since inmates can and have used clocks and other time keeping devices to monitor the activities of correction's staff and develop escape plans based on the timing of guard activities. Inmates have also used such ordinary instruments to fashion various contraband items, including weapons and tools to unlock restraint devices.

(R&R at 41 - 42.) The court accords substantial deference to the professional judgment of prison administrators, who bear a significant responsibility for defining a corrections system's legitimate goals and determining the most appropriate means to accomplish them. The court also finds a lack of clocks is not a dramatic departure from accepted standards for confinement conditions, nor does it create inhumane prison conditions, deprive inmates of basic necessities or fail to protect their health or safety, or involve the infliction of pain or injury or deliberate indifference to their risk. *See Overton,* 539 U.S. at 127, 123 S.Ct. at 2165. Because prohibiting clocks in the M.S.U. furthers the prison's interest in security, and is not a dramatic departure from accepted standards of confinement, the court finds that this prohibition is not a cruel and unusual confinement condition violating the Eighth Amendment.

Plaintiff also asserts that the Magistrate Judge erred in finding that the use of restraints

15

during outdoor recreation did not violate the due process clause and erred by not addressing Plaintiff's shackling of prisoners during visitation and medical examination claims.  (Objection No. 12, at 37 - 38.)  The court cannot agree.  As the R&R already explained, the SCDC policy of restraining inmates during their recreation/exercise has previously been upheld both by this court and by the Fourth Circuit.  (R&R at 45.)  *See Caprood v. Moore*, C/A No. 98-603 (D.S.C. May 27, 1999), aff'd No. 99-6792, 1999 WL 651848 (4th Cir. Aug. 26, 1999) (table) (finding that use of restraints while outside cell does not violate due process so long as prisoners may exercise inside cell).  Further, although not addressed by the Magistrate Judge, the court now finds that restraining Plaintiff during his doctor visits and non-contact visitations is also reasonably related to SCDC's interest in security and is not a dramatic departure from accepted standards for confinement conditions, nor does it create inhumane prison conditions, deprive inmates of basic necessities or fail to protect their health or safety, or involve the infliction of pain or injury or deliberate indifference to their risk.  For these reasons, the court finds that SCDC's use of restraints during outdoor recreation, doctor visits, and non-contact visitation is not a cruel and unusual condition of confinement.

**Objection No. 13:  Did the Magistrate Judge err in failing to address Plaintiff's claim that following the use of force on November 9, 2002, he was placed in isolation cell D-47 containing human blood and feces in violation of his Eighth Amendment rights?**

Plaintiff also asserts that the Magistrate Judge erred by failing to address his claim that, on November 9, 2002, he was placed in a "stripped-cell which contained human blood and feces spread over the walls-shower area of the cell. . . and that at no time was the cell cleaned-decontaminated prior to Plaintiff being placed inside the cell."  (Objection No. 13, at 39 - 42.)  In support of this

16

claim, Plaintiff submitted his own affidavit as well as the affidavit of fellow prisoner Conrad Slocumb.  In his affidavit, Mr. Slocumb stated that he had previously been held in cell D-47 and that he had mutilated himself with a razorblade and spread his blood and feces on the walls of the cell. Mr. Slocumb also testified that on November 9, 2002, he heard Plaintiff "pleading to Sgt. Scott to be placed inside another cell, because the cell he was about to be placed in had feces and blood on the walls and sink and that he was concerned about his health and safety."  (Id. at 40.)  Plaintiff asserts that the Magistrate Judge erred in failing to consider this evidence in support of his Eighth Amendment claim that he was subjected to cruel and unusual punishment.

The court does not agree.  First, the court has reviewed the videotape from November 9, 2002, which shows Plaintiff being placed in the isolation cell D-47 following his visit to Nurse Murphy.  In direct contradiction to the version of events described by Mr. Slocumb, the videotape shows Plaintiff being placed in the isolation cell without incident; Plaintiff does not plead to be placed in another cell and makes no comment regarding the condition of the cell.  In other words, the November 9, 2002 videotape, marked by an uninterrupted clock time stamp, plainly contradicts Mr. Slocumb's assertions.  Therefore, the court finds that no reasonable juror could credit the testimony of this witness.  *See Stewart v. Prince George's County, MD,* 75 Fed.Appx. 198 (4th Cir. September 23, 2003) (granting summary judgment for defendants where plaintiff's affidavits are directly contradicted by videotape of the event); *Sylvia Dev. Corp. v. Calvert County, Md.,* 48 F.3d 810, 818 (4th Cir. 1995) (explaining that while the party opposing summary judgment is entitled to the benefit of inferences that can be drawn from the evidence, "[p]ermissible inferences must still be within the range of reasonable probability" and that "[w]hether an inference is reasonable cannot be decided in a vacuum; it must be considered in light of the competing inferences to the contrary"

17

(internal quotation marks omitted)).  Further, Defendants submitted the affidavit of the Warden of

the Kirkland Correctional Institute, Mr. Bernard McKie, who testified that "[a]ny time an isolation

cell is contaminated by an inmate with blood or feces the inmate is removed from that contaminated

cell [which] is then cleaned and disinfected by corrections officers utilizing a bleach solution."

(McKie Affidavit, ¶ 20.)  As evidence that this general policy of the Institution was *not* followed,

Plaintiff offers only his own self-serving affidavit and the entirely incredible affidavit of a fellow

inmate.  In light of all the evidence, the court cannot conclude that Plaintiff and Slocomb's affidavits

regarding the condition of the isolation cell on November 9, 2002, create a genuine issue of fact.

*See Sylvia Dev. Corp.,* 48 F.3d at 818 (explaining that "[w]hether an inference is reasonable cannot

be decided in a vacuum; it must be considered in light of the competing inferences to the contrary"

(internal quotation marks omitted)).  Accordingly, the Magistrate Judge correctly recommended that

this claim be dismissed.

**Objection No. 15:  Did the Magistrate Judge err in recommending that summary
judgement be granted for Plaintiff's due process claims?**

As a result of Plaintiff's refusal to submit to a haircut on August 13, 2003, Plaintiff was

referred for a disciplinary hearing on the charge of refusing to obey an order.  (R&R at 31.)

Following a hearing on the merits, Plaintiff was found guilty of the charge and was sentenced to a

thirty day loss of good time.  (Id.)

In his Complaint, Plaintiff asserted that he was not afforded the procedural safeguards

required by SCDC Policy during his disciplinary hearing.  Plaintiff submitted affidavits of fellow

inmates in support of this claim.  Accordingly, citing the rule from *Accardi, Morgan* and *Heffner,*

Plaintiff asserted a § 1983 claim for damages for this violation of his Due Process rights.

18

In the R&R, the Magistrate Judge found that Plaintiff's claim regarding his disciplinary hearing was barred by *Heck v. Humphrey*, 512 U.S. 477 (1994). (R&R at 33.) *Heck* held, in pertinent part, that in order to recover damages for an allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must first prove that the conviction or sentence at issue has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determinations, or called into question by a federal court's issuance of a writ of habeas corpus. (Id.) The rule in *Heck* is equally applicable to cases which implicate the validity of an internal prison disciplinary conviction or sanction that affects the length of an inmate's overall sentence, including a loss of good time credits. *Edwards v. Balisok*, 520 U.S. 641, 648 (1997). In this case, because Plaintiff had not presented evidence to the court that his disciplinary conviction or penalty had been reversed, declared invalid, or called into question, the Magistrate Judge recommended that his § 1983 claim based on this alleged violation of Due Process rights be dismissed.

Plaintiff objects to this recommendation, but only reiterates his original argument that Defendants' failure to provide the procedural safeguards guaranteed by SCDC Policy during his disciplinary hearing violated his Due Process rights. (Objections at 45 - 48.) Plaintiff fails to object to the Magistrate Judge's finding that *Heck* bars his recovery for any Due Process violations which may have occurred. For this reason, the court finds that Plaintiff's objection is unresponsive to the R&R, and adopts the Magistrate Judge's recommendation without further consideration.

**Objection No. 16: Did the Magistrate Judge err by not addressing Plaintiff's claims against Defendants Lott, Johnson, and Wilson?**

19

In the Complaint, Plaintiff asserted that Defendants Leon Lott, Daniel Johnson, and David Wilson of the Richland County Sheriff's Department violated South Carolina Code § 16-5-30[8] by failing to investigate his numerous written complaints that he was being physically assaulted by SCDC officials.  (Complaint, ¶¶ 36 - 49.)  The Magistrate Judge did not address this claim in his R&R; rather, he generally found that all state law claims asserted by Plaintiff should be dismissed, without prejudice, for resolution in state court.  (R&R at 48.)

In his Objections, Plaintiff asserts that this claim against Defendants Lott, Johnson, and Wilson is really a federal claim under § 1983 and that the Magistrate Judge erred in failing to address it in his R&R.  (Objections at 48 - 50.)  Plaintiff asserts that Defendants' failure to investigate his complaints or intervene on his behalf constituted "deliberate indifference" towards Plaintiff's right to be free from cruel and unusual punishment.  (Objections at 49.)

The court finds this objection to be without merit.  Although a law enforcement officer has an affirmative duty to intercede on "behalf of a citizen whose constitutional rights are being violated *in his presence* by another officer, . . . [i]n order for [§ 1983] liability to attach, there must have been a realistic opportunity to intervene to prevent the harm from occurring."  *Ortiz v. Santora*, 223 F.Supp.2d 387, 395 (D. Conn. 2002).  In this case, Plaintiff does not allege that Defendants Lott, Johnson, and Wilson were present during any of the allegedly excessive uses of force by SCDC

---

[8] S.C. Code § 16-5-30 provides: "Any constable, sheriff or magistrate, upon receipt of notice from any person that he has knowledge of an intention or attempt to destroy his property or to collect a mob for that purpose, shall take all legal means necessary for the protection of such property as is attacked or threatened to be attacked, and if such constable, sheriff or magistrate, upon receipt of such notice or upon knowledge of such intention or attempt to destroy such property in any wise received, shall neglect or refuse to perform his duty in the premises, he shall be liable for the damages done to such property, to be recovered by action, and shall also be deemed guilty of a misdemeanor in office and, on conviction thereof, shall forfeit his commission."

officials; therefore, these Sheriff's deputies did not have a realistic opportunity to intervene to prevent the alleged violation.  Plaintiff therefore fails to allege facts that could support this deliberate indifference claim.  Accordingly, even assuming the Complaint can be read as asserting a claim under § 1983, Plaintiff's allegations do not state a constitutional violation.  Accordingly, the Magistrate Judge did not err in recommending that, to the extent Plaintiff asserts a state law cause of action, it should be dismissed to be pursued in state court.

**Objection No. 17:  Did the Magistrate Judge err in dismissing Plaintiff's defamation claim to be brought in state court?**

The Magistrate Judge found that Plaintiff's state law claims, including his claim for defamation, must be pursued in state court under the South Carolina Tort Claims Act ("SCTCA"), which establishes the South Carolina Court of Common Pleas as the sole court with jurisdiction over state law claims against governmental entities or their employees.  (R&R at 48, citing S.C. Code § 15-78-100(b).)  For this reason, the R&R recommends that Plaintiff's state law claims be dismissed without prejudice.

Plaintiff objects to this recommendation, but only reiterates his original argument that Defendants "continue to daily defame Plaintiff's character by constantly labeling him as the 'worst' of the 'worst.'"  (Objections at 50 -51.)  Plaintiff does not object to the Magistrate Judge's conclusion that, under the SCTCA, jurisdiction over this claim is only proper in state court. Accordingly, the court finds this objection is unresponsive to the R&R, and adopts the Magistrate Judge's recommendation with no further comment.

## CONCLUSION

For the reasons set forth above, the court **ADOPTS** the R&R's recommended disposition in full.

It is therefore **ORDERED** that Defendants' Motions for Summary Judgement as to Plaintiff's claims under 42 U.S.C. § 1983 are hereby **GRANTED**.  Plaintiff's state law claims are hereby **DISMISSED** without prejudice, so that Plaintiff may pursue these claims in state court, if he so chooses.

It is further **ORDERED** that all other Motions currently pending before the court are now **MOOT** and are **DISMISSED.**

**AND IT IS SO ORDERED**.


PATRICK MICHAEL DUFFY
United States District Judge


**Charleston, South Carolina**
**March 20, 2007.**

22