# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF SOUTH CAROLINA

| Kevin Smith, a/k/a | ) |  |
|---|---|---|
| Bar None Royal Blackness, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | C.A. No.: 9:04-01819-PMD |
| v. | ) | |
| | ) | |
| John Ozmint, Director of the South | ) | **ORDER** |
| Carolina Department of Corrections, et al., | ) | |
| | ) | |
| Defendants. | ) | |

This matter is before the court on Plaintiff Kevin Smith's, a/k/a Bar None Royal Blackness's, ("Plaintiff") Objections to the Report and Recommendation ("R&R") of a United States Magistrate Judge. Plaintiff originally filed this action alleging that the Defendants violated his constitutional rights and the Religious Land Use and Institutionalized Persons Act ("RLUIPA") on June 23, 2004. By Order filed March 20, 2007, Defendants were granted summary judgment on all of Plaintiff's claims. Plaintiff filed a Notice of Appeal with the United States Court of Appeals for the Fourth Circuit, and in a decision issued July 31, 2009, the Fourth Circuit affirmed the decision of the District Court, with the exception of Plaintiff's claim asserted under RLUIPA, which was remanded for further consideration. *Smith v. Ozmint,* 578 F.3d 246 (4th Cir. 2009).

Upon return of the case to this Court, Plaintiff filed a motion for a preliminary injunction. On October 30, 2009, Defendants filed a renewed motion for summary judgment on Plaintiff's RLUIPA claim. Plaintiff filed a response in opposition to the motion for summary judgment on November 23, 2009, and after being granted an extension of time, Defendants filed a reply on

1

December 14, 2009. Plaintiff thereafter filed additional material in opposition to the Defendants' motion on December 23, 2009 and on January 4, 2010.

In accordance with 28 U.S.C. § 636(b)(1)(B) and Local Rule 73.02, the matter was referred to a United States Magistrate Judge, who issued a Report and Recommendation ("R&R") recommending that Defendants' motion for summary judgment be granted. Plaintiff filed timely Objections to the Magistrate's Report and Recommendation. Having reviewed the entire record, including Plaintiff's Objections, the court finds the Magistrate Judge fairly and accurately summarized the facts and applied the correct principles of law. Accordingly, the court adopts the R&R and fully incorporates it into this Order.

## **BACKGROUND**

Plaintiff is currently an inmate in the Maximum Security Unit ("MSU") at the Kirkland Correctional Institution of the South Carolina Department of Corrections ("SCDC"). SCDC maintains two specialized housing units, the MSU and the Special Management Unit ("SMU"), for prisoners requiring greater monitoring and supervision than the general prison population. MSU is a "supermax" facility and is a specialized housing unit for inmates who have demonstrated an unwillingness to conform to the rules and regulations of SMU. Inmates in MSU, including Plaintiff, have earned their placement in the unit as a result of violent and criminal behavior committed while in prison, including acts of hostage taking, participation in riots, assaults on staff and other inmates, and escapes. MSU inmates are essentially confined to their cells except for an hour of exercise per day, five days a week. When MSU inmates are permitted to leave their cells, they are restrained with leg irons, security cuffs, and/or belly chains. Plaintiff has been housed in MSU since April 1995, following his participation in a prison riot and hostage taking at Broad River Correctional Institution.

Inmates within MSU are subject to the SCDC grooming policy that requires inmates to maintain a haircut no longer than one inch in length and that prohibits beards. The grooming policy also provides that inmates can be given forced haircuts or shaves if they refuse to comply with the haircut and shave schedule. Plaintiff, who is a practicing Rastafarian, refused to comply with the grooming policy because of his religious beliefs. As a result, MSU employees forcibly shaved Plaintiff's head on at least two occasions, November 9, 2002 and August 13, 2003. Plaintiff alleges that the enforcement of the Grooming Policy against him violates his rights under the Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA"), 42 U.S.C. § 2000cc-1.

Defendants previously moved for and were granted summary judgment on Plaintiff's RLUIPA claim as well as all other causes of action. Plaintiff appealed that decision, and on July 31, 2009, the Fourth Circuit Court of Appeals issued an opinion which affirmed in part, vacated in part, and remanded. The Fourth Circuit remanded only the RLUIPA claim for further proceedings. The dismissal of all other causes of action was affirmed.

RLUIPA provides that no government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution unless the government demonstrates that imposition of the burden on that person (1) is in furtherance of a compelling governmental interest and (2) is the least restrictive means of furthering that compelling governmental interest. *See* 2 U.S.C. § 2000cc-1(a); *Cutter v. Wilkinson*, 544 U.S. 709, 714-15 (2005). In granting summary judgment on Plaintiff's RLUIPA claim, this Court found both that the grooming policy was in furtherance of a compelling governmental interest and that it was the least restrictive means of furthering that compelling governmental interest. In reversing this Court's decision, the Fourth Circuit held that the SCDC grooming policy imposes a substantial burden on

Plaintiff's exercise of his genuinely held religious beliefs and that the Defendants had failed to proffer evidence sufficient to establish that a rational fact finder could only find for the government. Specifically, the Fourth Circuit faulted Defendants for relying on an affidavit of Robert Ward that dealt with SMU inmates when Plaintiff was not housed in SMU but in MSU, and the Fourth Circuit also found that Ward's affidavit did not adequately address the least restrictive means requirement. *Smith,* 578 F.3d at 251-54.

To address the deficiencies cited by the Fourth Circuit in its decision and in support of their renewed motion for summary judgment, Defendants have submitted a new affidavit from Ward that addresses both the compelling interests served by the grooming policy at MSU and that explains how the specific grooming policy in place is the least restrictive means of furthering that compelling interest. Defendants also have submitted an affidavit from Gary Lane, currently the Associate Warden of the Tyger River Correctional Institution and who during the time period relevant to Plaintiff's complaint was the Captain of the MSU at the Kirkland Correction Institution. Gary Lane also addresses the need for a forced grooming policy in MSU and the compelling governmental interest served thereby. Finally, Defendants have submitted an affidavit from Sandra Barrett, who is the Warden of the Goodman Correctional Institution (a female institution) and who describes the differences between male and female institutions and why male MSU inmates cannot be treated in the same manner as female inmates. On pages five through seventeen of the R&R, the Magistrate Judge provides a thorough summary of these affidavits, and that summary is hereby incorporated by reference into this Order.

On January 25, 2010, the Magistrate Judge issued an R&R recommending that Defendants' motion for summary judgment be granted. Plaintiff filed timely Objections to the Magistrate's Report and Recommendation.

## STANDARD OF REVIEW

### A. Legal Standard for Summary Judgment

To grant a motion for summary judgment, the court must find that "there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The judge is not to weigh the evidence, but rather to determine if there is a genuine issue of fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). If no material factual disputes remain, then summary judgment should be granted against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which the party bears the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). All evidence should be viewed in the light most favorable to the non-moving party. *Perini Corp. v. Perini Constr., Inc.*, 915 F.2d 121, 123–24 (4th Cir. 1990). Summary judgment is not "a disfavored procedural shortcut," but an important mechanism for weeding out "claims and defenses [that] have no factual bases." *Celotex*, 477 U.S. at 327.

### B. Magistrate Judge's R&R

The Magistrate Judge made his review in accordance with 28 U.S.C. § 636(b)(1)(B) and Local Civil Rule 73.02. The Magistrate Judge only makes a recommendation to the court. It has no presumptive weight, and the responsibility for making a final determination remains with the court. *Mathews v. Weber*, 423 U.S. 261, 270–71 (1976). Parties are allowed to make a written objection to a Magistrate Judge's report within ten days after being served a copy of the report. 28 U.S.C. § 636(b)(1). From the objections, the court reviews *de novo* those portions of the R&R that have been specifically objected to, and the court is allowed to accept, reject, or modify the R&R in whole or in part. *Id.* Additionally, the court may recommit the matter to the Magistrate Judge with instructions. *Id.*

# ANALYSIS

## I.     Magistrate Judge's R&R

The Magistrate Judge first noted that because it had already been established that the grooming policy at issue substantially burdens Plaintiff's religious exercise, for purposes of Defendant's renewed motion for summary judgment on Plaintiff's RLUIPA claim, the Court must only decide whether there is a genuine issue of fact as to whether the grooming policy at issue is in furtherance of a compelling governmental interest and is the least restrictive means of furthering that compelling governmental interest. R&R p. 20-21. Additionally, the Magistrate Judge noted that Defendants bear the burden of showing that the grooming policy serves a compelling governmental interest and is the least restrictive alternative. R&R p. 21. Finally, "in considering whether the grooming policy at issue furthers a compelling governmental interest and is the least restrictive alternative, due deference must be given 'to the experience and expertise of prison and jail administrators in establishing necessary regulations and procedures to maintain good order, security and discipline, consistent with consideration of costs and limited resources.'" R&R. p. 21 (citing *Smith,* 578 F.3d at 252 (citing *Cutter*, 544 U.S. at 723)).

Based on the legal principles noted above, the Magistrate Judge found that Defendants have met their burden. First, the Magistrate Judge found that Defendants have provided enough evidence to show that the grooming policy serves a compelling penological interest. R&R p. 21. "The testimony of Ward and Lane, both experienced prison officials with long histories of dealing with potentially violent and recalcitrant inmates, establishes that the grooming policy promotes security and discipline as well as the health and safety of both inmates and staff." Id. The compelling reasons asserted by both Ward and Lane include: maintaining control over dangerous inmates housed in MSU, maintaining order and discipline, reducing opportunities for

the hiding of contraband, fostering the hygiene and sanitation of inmates and staff, protecting staff from harm and health concerns, preventing inmates from dramatically altering their appearance in the event of an escape, deterring escapes, and ensuring that the bed space in MSU is used for dangerous and disruptive inmates and not those trying to avoid the grooming policy. The Magistrate Judge also found that the Fourth Circuit has already concluded that the SCDC's grooming policy serves a compelling penological interest. R&R p. 21-22 (citing *Hines v. South Carolina Dep't of Correc.,* 148 F.3d 353, 358 (4th Cir. 1998); *cf. McRae v. Johnson,* 261 Fed. Appx. 554, 558 (4th Cir. 2008)).

Second, the Magistrate Judge found that Defendants have also met their burden of establishing that MSU's forced grooming policy is the least restrictive means of furthering SCDC's compelling interests. R&R p. 22. The Magistrate Judge notes that Plaintiff could not be granted an exception to the grooming policy because such an exception "would force MSU officials to determine which inmate has a sincere belief and which does not, putting officials in an impossible situation and subjecting them to even more lawsuits, would impose different standards for incarceration on different inmates leading to conflict and confrontation, and would disrupt or even jeopardize the operation, safety and continuity of the MSU." R&R pp. 22-23. Additionally, the Magistrate Judge rejected an alternative where SCDC could segregate inmates who choose not to cut their hair rather than subjecting them to forced cutting. The Magistrate Judge first noted that just because other jurisdictions use segregation as an alternative to forced shaving does not mean that SCDC is bound by the policies and procedures that may be enacted by other jurisdictions for their own reasons. R&R p. 23. In regards to the segregation alternative, the Magistrate Judge noted that:

> In the case at bar, Ward attests that the SCDC has only fifty cells in the entire MSU facility, representing the total number of beds available to house the most

violent inmates within the SCDC system, all of whom must be single celled, and that the SCDC cannot afford to use this specialized unit to house inmates who refuse to comply with the grooming standards. Further, allowing inmates to maintain long hair and beards in such a setting does not address the Defendants' need to maintain safety and security, reduce unsanitary conditions and other hygiene issues for officers who interact with inmates, reduce opportunities for the hiding of contraband, and prevent inmates from dramatically altering their appearance in the event of an escape.

R&R pp. 23-24.

Finally, the Magistrate Judge found that "to the extent Plaintiff argues that the fact that female inmates are allowed to wear longer hair shows that the SCDC grooming policy does not meet the least restrictive means requirement, the evidence submitted is sufficient to meet the Defendants' burden of showing the grooming policy is the least restrictive means" as both Ward and Barrett attest to significant differences between male and female inmate populations. R&R pp. 25-26. In sum, the Magistrate Judge found "that the grooming policy at issue in this case as applied to the Plaintiff, a maximum security inmate with a history of violence, is permissible under the RLUIPA, even though it substantially burdens his religious exercise, because it meets a compelling governmental interest and is the least restrictive means of furthering that interest." R&R p. 26.

## II.    Plaintiff's Objections

**Objection No. 1: The Magistrate Court erred in placing the burden of proof on Plaintiff as to whether SCDC's MSU grooming policy, as applied, violates the RLUIPA.**

In this objection, Plaintiff claims that the Magistrate Judge erroneously placed the burden of proof on Plaintiff as to the compelling interest and least restrictive means elements of his claim. However, after reviewing the entire R&R, the court finds that the Magistrate Judge properly placed the burden of proof on the Defendants to show both that the grooming policy furthered a compelling governmental interest and that the specific grooming policy at the MSU is

8

the least restrictive means of furthering that interest. On page 21 of the R&R, the Magistrate Judge clearly notes that the burden of proof is on the Defendants as to these two elements. Additionally, with respect to whether there is a compelling governmental interest for MSU's grooming policy, the Magistrate Judge found that the "Defendants have met their burden of proof with respect to showing a compelling governmental interest." R&R p. 22. Then, the Magistrate Judge found that "the evidence submitted is sufficient to meet the Defendants' burden of showing the grooming policy is the least restrictive means of furthering a compelling governmental interest." R&R p. 25. Therefore, the Court finds Plaintiff's objection to be without merit and finds that the Magistrate Judge properly placed the burden of proof on the Defendants.

**Objection No. 2: Under RLUIPA, Plaintiff was deemed to prevail on the merits of his claim unless SCDC succeeded under the compelling interest test. Summary Judgment is not the proper procedure to decide whether the government succeeded under the compelling interest test.**

In this objection, Plaintiff claims that "summary judgment is not the proper procedure to decide whether the government succeeded under the compelling interest test because such a decision must be based on the Government's (and possibly Plaintiff's) evidence, which must be weighed by the Judge. And on summary judgment, the Judge is not to weigh the evidence but rather must determine if there is a genuine issue for trial." Pl. Obj. p. 5-6 (citing *Anderson v. Liberty Lobby Inc.,* 477 U.S. 242, 249 (1986)).

The court finds this objection to also be without merit. Summary judgment is appropriate on Plaintiff's claim "if a rational factfinder would necessarily find that the grooming policy withstands scrutiny under RLUIPA." *Smith,* 578 F.3d at 252 (citing *Gooden v. Howard County, Md.,* 954 F.2d 960, 971 (4th Cir. 1992)). "As to those elements on which it bears the burden of proof, a government is only entitled to summary judgment if the proffered evidence is such that a

9

rational factfinder could only find for the government." *Id.* The Magistrate Judge found that under the evidence presented by the Defendants a rational factfinder could only find for the government; the Magistrate Judge did not weigh the evidence but found that under all the evidence presented there was no issue as to any material fact and that the Defendants were entitled to judgment as a matter of law. Therefore, whether there is a compelling interest and whether the policy at issue is the least restrictive means of furthering that compelling interest are questions that can properly be decided at the summary judgment stage, and the court finds Plaintiff's objection to be without merit.

**Objection No. 3: The policies of correctional systems in other jurisdictions are relevant evidence when considering whether a particular type of prison restriction is necessary and whether prison officials are employing the least restrictive means to further their compelling penological interest.**

Plaintiff claims that the "Magistrate Court held that grooming policies of correctional systems in other jurisdictions [are] not evidence in actions under RLUIPA. . . . The Magistrate Court erred." Pl. Obj. p. 6. Plaintiff argues that the fact that other jurisdictions either do not have a grooming policy, allow for religious exemptions from the grooming policy, or do not provide for the forced shaving or cutting of inmates shows that there are other alternatives to MSU's grooming policy and that MSU's policy is not the least restrictive alternative.

The court finds Plaintiff's objection to be without merit. As the Magistrate Judge noted "while some jurisdictions do apparently employ such [procedures], the SCDC is not bound by policies and procedures that may be enacted by other jurisdictions for their own reasons." R&R p. 23; *see also Hill v. Blackwell,* 774 F.2d 338, 344-45 (8th Cir. 1985) ("Although the policy of other institutions is relevant in determining the need for a particular regulation, it is clearly not dispositive. . . . In this case it is enough to say that although the federal institutions and approximately one-half of the states [] do not enforce a beard regulation, approximately one-half

10

of the states have determined that enforcing a beard regulation is important to the proper functioning of their penal institutions.").

The court finds that in this case MSU's grooming policy is the least restrictive means of achieving the Defendants' compelling governmental interests despite the fact that other jurisdictions have policies that are different than MSU's policy. As stated above and as detailed in Ward's and Lane's affidavits, the compelling interests furthered by MSU's grooming policies include maintaining control over dangerous inmates housed in MSU, maintaining order and discipline, reducing opportunities for the hiding of contraband, fostering the hygiene and sanitation of inmates and staff, protecting staff from harm and health concerns, preventing inmates from dramatically altering their appearance in the event of an escape, deterring escapes, and ensuring that the bed space in MSU is used for dangerous and disruptive inmates and not those trying to avoid the grooming policy. Plaintiff argues that SCDC could employ a less restrictive grooming policy and still further those compelling interests. For example, Plaintiff provides evidence of multiple jurisdictions that do not have grooming polices at all. Additionally, Plaintiff points to the grooming policies of other jurisdictions that provide for a religious exemption to the grooming policy. Lastly, Plaintiff points to jurisdictions that have grooming policies but whose policies do not allow for the forced shaving/cutting of inmates but instead require that non-compliant inmates be housed in confinement. Plaintiff argues that the policies of these other jurisdictions show that MSU's policy at issue in this case is not the least restrictive alternative to further their asserted compelling interests.

The court finds that the Magistrate Judge properly found that the Defendants have met their burden of showing that the MSU grooming policy is the least restrictive means of furthering SCDC's compelling interests. The court finds that allowing a religious exemption in MSU will

not accomplish the compelling governmental interests identified above. As Ward testifies in his affidavit:

> In my professional judgment, a religious exemption for inmates in MSU would not work for several reasons. First, a religious exemption would be impossible to enforce because MSU inmates typically try to beat the system. Those are the type of inmates who are assigned to MSU—inmates who have no respect for rules and regulations and who look for ways to be noncompliant. MSU officials would be faced with inmates asserting religious reasons for not complying with policy even if those reasons were not sincere or legitimate. That would force MSU officials to determine which inmate has a sincere belief and which does not, and that would put the officials in an impossible situation and subject the officials to more lawsuits. Ultimately, we will be faced with a majority of inmates in MSU (if not all inmates) insisting on growing their hair and not shaving, which will increase the hygiene and sanitation problems as well as the security concerns discussed in this affidavit. That will also require more manpower and resources to be committed to MSU, and those resources are simply not available in these difficult budgetary times where SCDC is already running a significant deficit. In addition, a religious exemption does not satisfy the security concerns with potential escapes. Inmates who would be subject to a religious exemption are no less threats to escape. Further, a religious exemption does nothing to alleviate the hygiene and sanitation issues nor the security concerns. As discussed above, there are frequent opportunities for MSU inmates and security personnel to come into close contact. That is not less so with inmates who would enjoy a religious exemption. The use of gloves does not eliminate the threat from inmates who place such sharp objects in their hair. Moreover, there is concern that the searches of inmates with long hair will be more time consuming and less effective in locating contraband. It is a fact that contraband—weapons, drugs, etc.—is easier to hide and avoid detection in long hair and beard.

Ward Aff., para. 38.

The court finds that providing an exemption to the grooming policy is not a viable alternative to achieve SCDC's compelling interests as an exemption would detract from achieving the goals of maintaining order and discipline, reducing opportunities for the hiding of contraband, fostering the hygiene and sanitation of inmates and staff, protecting staff from harm and health concerns, preventing inmates from dramatically altering their appearance in the event of an escape, and deterring escapes. Additionally, providing an exemption or segregating non-complaint inmates in MSU would be detrimental to ensuring that the bed space in MSU is used for dangerous and

disruptive inmates and not those trying to avoid the grooming policy. If inmates in MSU were allowed to be non-compliant with the grooming policy, then there would be an incentive for inmates who wish to have long hair or a beard to stay in MSU or to be transferred to MSU. "MSU is a 50-cell unit that should be reserved only for the 'worst of the worst.' When an inmate assigned to MSU is rehabilitated to the point that he should be released to less secure facilities—first a Special Management Unit and ultimately into the general population—he should not be able to remain in MSU because that is the only place where he need not comply with the Grooming Policy. A religious exemption will inevitably tie up beds in MSU for inmates who should be moved out of the unit and who would be moved except that they refuse to comply with the Grooming Policy. . . . In addition, if MSU inmates were allowed a religious exemption, which is not allowed for any other inmates, there would be in effect an incentive for inmates who want to grow their hair to commit the types of behaviors . . . simply to gain a transfer to MSU." Defs.' Mem. p. 18.

Also, providing an exemption or segregating non-complaint inmates in MSU would not further SCDC's compelling interests in fostering the hygiene and sanitation of inmates and staff and protecting staff from harm and health concerns. Defendants argue that in MSU there is "more frequent and closer contact between the inmates and the correctional staff than what is normally experienced between inmates and staff in the general population. The record demonstrates that the Maximum Security Unit is unique in that all services are provided to MSU inmates by the correctional staff. There is no inmate labor allowed on the unit for security reasons. MSU staff consequently have much greater interaction with the inmates than in other facilities." Def's Mem. p. 16 (internal citations omitted). That frequent interaction between inmates and staff includes frequent body searches. Every time an MSU inmate is moved from

13

his cell, whether it is to another area of the unit or a recreational area or outside the facility, that inmate is searched for weapons and contraband. Inmates are also subject to random strip searches to guard against weapons and contraband. *See,* Ward Aff., paras. 22-30. Therefore, allowing a religious exception to the grooming policy would do nothing to further and would detract from Defendants' compelling interests in fostering the hygiene and sanitation of inmates and staff and protecting staff from harm and health concerns.

Therefore, based on the foregoing, the Court finds Plaintiff's objection 3 to be without merit and finds that despite the differing policies of other jurisdictions, MSU's grooming policy is the least restrictive means to achieve the Defendants' compelling governmental interests.

**Objection No. 4: The Magistrate Court erred in recommending summary judgment in favor of SCDC on Plaintiff's claim that the MSU grooming policy, as applied to him, violates the RLUIPA because the Magistrate Court erroneously placed the burden of proof on Plaintiff; erroneously rejected Plaintiff's evidence and weighed the evidence; and erred in resolving issues of material fact in favor of SCDC. The court erred in failing to enter summary judgment in favor of Plaintiff on his RLUIPA claim where the record demonstrates that SCDC's MSU grooming policy, as applied to Plaintiff, is not the least restrictive means to further to further the asserted compelling penological interests.**

In the first part of Objection 4, Plaintiff again claims that the Magistrate Judge erroneously placed the burden of proof on Plaintiff. For the reasons discussed under the Court's analysis of Objection 1, the Court finds this part of Objection 4 to be without merit. Also as part of Objection 4, Plaintiff claims that the Magistrate Judge erroneously rejected and weighed Plaintiff's evidence and resolved issues of material fact in favor of SCDC. The Court also finds this part of Objection 4 to be without merit. The Magistrate Judge properly considered Plaintiff's evidence and found that the Defendants were entitled to summary judgment even if Plaintiff's evidence were assumed to be true. *See* R&R pp. 17-20, 22-23, 25. Lastly, Plaintiff again claims that the MSU grooming policy is not the least restrictive means of furthering

Defendants' compelling penological interests.  For the reasons discussed in the Court's analysis of Objection 3 above, the Court finds this part of Objection 4 to also be without merit.

**Objection No. 5:  The Magistrate Court erred in failing to address Plaintiff['s] argument and record evidence regarding space utilization, hygiene, sanitation and security measures implemented within the SCDC MSU grooming policy, which renders forced haircuts unnecessary.**

In this Objection, Plaintiff appears to argue that the differences in MSU, versus SMU and general population, in regards to space, hygiene, sanitation and security render forced haircuts unnecessary.  Plaintiff seems to be addressing the Magistrate Judge's analysis of the least restrictive means element of Plaintiff's RLUIPA claim.  The Court finds that the Magistrate Judge properly considered Plaintiff's arguments and evidence regarding space utilization, hygiene, sanitation, and security measures and properly concluded that MSU's grooming policy was the least restrictive means to achieve Defendants' compelling interests including their compelling interests relating to space utilization, hygiene, sanitation, and security.  *See* R&R pp. 22-27.  This Court has also addressed MSU's grooming policy in regards to furthering the goals of space utilization, hygiene, sanitation, and security in its analysis of Objection 3 above.  Therefore, the Court finds Plaintiff's Objection 5 to also be without merit.

**Objection No. 6:  The Magistrate Court erred in failing to disregard and or strike Defendant's SCDC['s] perjured testimony from the record of these proceedings, and erroneously failed to apply the applicable federal statutes to convict a person(s) who has transmitted false averments by mail in a civil rights suit.**

In this last objection, Plaintiff claims that "SCDC has also submitted false testimony perjuring themselves in these proceedings asserting evidence of contraband within the highly secured MSU including objects used to fashion handcuff keys and other weapons, that while at MSU Plaintiff has remained aggressive and non-compliant with SCDC rules and has been involved in numerous incidents of violence towards Staff . . . and that Plaintiff used a metal

shank to cut an officer involving the November 9, 2002 incident which was an issue in this case." Pl. Obj. p. 23. Plaintiff claims that this testimony is false and that he has submitted evidence to the Court that undermines or refutes this testimony. Plaintiff points to annual custody review progress reports that show Plaintiff maintaining a Level III status in prison and claims that "Level III refers to a larger or somewhat broadened range of privileges and opportunities. Advancement to this level is based on acceptable behaviour demonstrated in Level II." Pl. Opp'n Memo p. 25. However, Plaintiff has presented no evidence which proves that SCDC has submitted false testimony. In fact, the evidence supports the testimony that Plaintiff has remained aggressive and non-compliant with SCDC rules and has been involved in numerous incidents of violence towards Staff. Plaintiff is an inmate of MSU and is serving a consecutive 83-year sentence as a result of Plaintiff's participation in a riot at the Broad River Correctional Institution that resulted in the taking of hostages and serious staff injuries. Therefore, the Court finds Plaintiff's objection 6 to be without merit.

## CONCLUSION

For the foregoing reasons, the court agrees with the Magistrate Judge's Report and Recommendation and **ORDERS** that Defendants' Motion for Summary Judgment is **GRANTED** and Plaintiff's case is **DISMISSED**. Pursuant to granting summary judgment in favor of Defendants, Plaintiff's pending motion for a preliminary injunction is **DENIED.**

**AND IT IS SO ORDERED**.

_____
PATRICK MICHAEL DUFFY
United States District Judge

**March 18, 2010**
**Charleston, SC**